CASE 96—ACTION BY BEATRICE MOAYON AGAINST HER HUSBAND, MAX MOAYON, TO ENFORCE A CONTRACT MADE BY THEM TO AVOID A SEPARATION.—FEB. 13.

## Moayon v. Moayon.

APPEAL FROM CHRISTIAN CIRCUIT COURT.

JUDGMENT FOR DEFENDANT ANT PLAINTIFF APPEALS. REVERSED.

HUSBAND AND WIFE—CONTRACT—CONSIDERATION—SPECIFIC PERFORMANCE—MUTUALITY OF REMEDY—STATUTE OF FRAUDS.

Held:   1. Where husband and wife are living apart because of grounds of divorce which she has, and on which she has had prepared a petition for divorce, her forgiving him and resumption of her relation of wife is sufficient consideration for his agreement to convey property for their children.

2. It is no defense against specific performance of an agreement for sale of an undivided interest in property that it may subsequently be sold to an undesirable person.

3. Where, in consideration of the mutual agreement of husband and wife, living apart because of her ground for divorce, to live

Moayon v. Moayon.

with each other as husband and wife, he agrees to make a conveyance of property, and prior to the conveyance they resume their living together, it is no defense to specific performance of his agreement to convey that there is lack of mutuality of remedy, whereby he may compel her always to live with him.

4. A contract to convey a third of all one's estate, of whatever nature, acquired by him under his mother's will, or otherwise acquired and now owned by him, sufficiently describes the property, as it may be identified by parol evidence, to satisfy the statute of frauds.

5. A contract between husband and wife, by which he agrees to convey property, being just and reasonable, and such as would be good at law if made by him with a trustee for her, will be enforced in equity.

HUNTER, WOOD & SON, KOHN, BAIRD & SPINDLE AND BARKER & WOODS, ATTORNEYS FOR APPELLANTS.

This case is appealed from a judgment of the Christian circuit court dismissing on demurrer the petition of the appellants (plaintiffs below).

Only propositions of law are involved. They are interesting, and, though novel in this State are well established by the decisions of other States. The questions involved may be generally stated thus:

1. If a wife, having reasonable grounds for believing she has good cause for a divorce, separates from her husband, and, while living apart, in consideration of his promise to treat her according to the full measure of his marital obligations, and his agreement to convey one-third of his property to a trustee for the benefit of their children, condones his wrongs and returns to his home and makes him a dutiful wife, and he then refuses to make the transfer and conveyance of the property,—a court of equity will decree a specific performance of the contract by compelling him to make the necessary conveyances.

2. The general rule that a contract, to be specifically enforced in equity, must be mutual in its obligation and remedy does not apply where the contract has been fully executed by one party, and all that remains for full execution is performance by the other party.

In conclusion we can only add that appellee stands in this court without one redeeming feature to his position. He has accepted the benefits of an agreement with his wife and now refuses to comply with his part of the contract; he interposes no defense that rises above a technical quibble as to the possible effect of the agreement which was signed at the time he and his

wife entered into the agreement whereby she became reconciled and returned to his home. Although he has been guilty of an actual fraud on his wife and children, he attempts to justify his present position by some of his own shortcomings. There is not one equitable claim in the stand he takes.

On the other hand, appellant comes into this court with clean hands. She has performed her part of the contract sought by the appellee, and having fully performed, and having been deceived by the appellee, she appeals to this court in behalf of herself and her infant children to compel the appellee to fulfill, at the behest of the court, the promise so solemnly made and so faithlessly broken.

Upon the whole case, we therefore submit to the court that none of the objections made to the specific enforcement of this contract is well taken. We submit:

1. That the contract is founded upon a valuable consideration, and that its making and its enforcement are favored upon principles of public policy.

2. That the contract is definite and certain, fair and reasonable, and that if there be any equitable reason against its enforcement such is not apparent upon the contract itself or upon the face of the petition, and must be presented by answer.

3. That the contract is not open to any defense of a lack of mutuality or obligation or remedy on the part of the wife, because she has performed.

4. That the description of the property to be conveyed is sufficiently certain and sufficiently identified to satisfy the statute of frauds, and that extraneous evidence will only be necessary to apply the description, a necessary incident of all contracts and conveyances.

5. That a wife is not precluded by the laws of this State from entering into an enforcible agreement settling the property rights between herself and her husband.

## AUTHORITIES CITED.

1. The consideration executed by appellant is a valuable one and sufficient to sustain an action for specific performance, and even were it only meritorious it would be sufficient under the Kentucky decisions. Gaines v. Poor, 3 Met., 503; Flood v. Flood, 5 Bush, 170; Loud v. Loud, 4 Bush, 455; Evans v. Evans, 93 Ky., 510; Bishop's Marriage, Divorce and Separation, sec. 1279; Adams v. Adams, 91 N. Y., 381; Phillips v. Meyers, 82 Ill., 70; Barbour v. Barbour, 49 N. J. Eq. Rep., 429; Nelson on Divorce and Separation, vol. 1, sec. 507; Rathmeier v. Beckwith, 35 Mich., 110; Reamey v. Bailey, 11 Atl. Rep., 439; Colame v. Same, 26

N. J. Eq., 551; Butler v. Butler, 42 Atl., 755; Foote v. Nickerson, 53 Cen. Law Journ., 146; Hart v. Hart, L. R., 18 Ch. Div., 670; Stanes v. Stanes, L. R., 3 P. D., 42; Smith v. Smith, 35 Hun., 378; Phillips v. Thompson, 1 Johns. Ch. (N. Y.) 131-149; Wakeman v. Dodd, 27 N. J. Eq., 564; Sheperd v. Sheperd, 7 Johns. Ch. (N. Y.) 57; Casto v. Fry, 33 W. Va., 449; Parsons on Contracts, vol. 3, p. 314; Stedman v. Guthrie, 4 Met., 146; Talbott v. Stemmon's Exor., 89 Ky., 222; Allen v. Pryor, 3 A. K. Marshall, 305; Lancaster v. Burkhart, 2 Bibb, 30; Sanders v. Miller, 79 Ky., 520; Cotton v. Graham, 84 Ky., 672; McIntyre v. Hughes, 4 Bibb, 187; Stovall v. Barnett, 4 Litt., 207; Ford v. Ellingwood, 3 Met., 359; Arnold v. Park, 8 Bush, 3.

2. The doctrine that there must be mutuality of obligation and remedy for the specific enforcement of a contract does not apply where the party seeking enforcement has performed. Pomeroy's Eq. Jurisprudence (2d ed.) secs. 1405, 932, 1407, 1409; Green v. Richards, 23 N. J. Eq., 32, 35; Woodruff v. Woodruff, 44 N. J. Eq., 349; Wilkes v. Railroad, 79 Ala., 180; Welch v. Whelply, 62 Mich., 15; 4 Am. St. Rep., 810; Am. & Eng. Ency. of Law (1st ed.) vol. 22, pp. 1020-1022; Warvelle on Vendors, (2d ed.) vol. 2, sec. 739; Simon v. Wildt, 84 Ky., 157; Fry on Specific Performance, 207; Logan National Bank v. Townsend, 8 R., 694; Boucher v. Van Buskirk, 2 Marshall, 724.

3. The contract here sought to be enforced is reasonable and fair both in law and in facts. Gooding v. Gooding, 20 Rep., 955; Irwin v. Irwin, Id., 1761.

4. The contract sufficiently described the property to be conveyed. White v. Herman, 51 Ill., 243; Gerrish v. Towne, 3 Gray (Mass.), 82; Nichols v. Johnson, 10 Conn., 199; 25 Pac. Rep., 728; 3 Starkey on Evidence, 1621; Johnson v. Ronalds, 4 Munf., 77; Jackson v. Sill, 11 Johns. Rep., 201; Doolittle v. Blackislee, 4 Day, 265; Barry v. Coombie, 1 Peters, 640; Hurley v. Brown, 98 Mass., 545; 22 Am. and Eng. Ency. of Law (1st ed.), 965; Ragsdale v. Metz, 65 Tex., 255; Warvelle on Vendors, vol. 1, secs. 96, 135; Holcombe v. Hays, 23 Rep., 352.

5. This action is not subject to any want of capacity in the appellants to sue. Evans v. Evans, 93 Ky., 510; Loud v. Loud, 4 Bush, 453; Bohannon, &c. v. Travis, 94 Ky., 59; Story's Eq. Jurisprudence, sec. 1372; Maraman v. Maraman, 4 Met., 84; Livingston v. Livingston, 2 Johns. Ch., 537; Ward v. Crotty, 4 Met., 59; Garlick v. Strong, 3 Paige, 440; Marshall v. Hutchinson, 5 B. Mon., 298; McCann v. Letcher, 8 B. Mon., 320; Athurly on Marriage Settlements, 161; 2 Kent's Com., 166; Barron v. Barron, 24 Vermont, 398; Sanders v. Miller, 79 Ky., 520; Kalfus

v. Kalfus, 92 Ky., 542; Leahy v. Leahy, 97 Ky., 59; Campbell, &c. v. Galbreath, 12 Bush, 459; Kentucky Statutes, sec. 2128; Civil Code, sec. 34.

JOHN C. DUFFY, FOR APPELLEE.

### PROPOSITIONS RELIED ON FOR APPELLEE.

1. A married woman could not sue her husband at common law and that disability has not been removed by statute in Kentucky. Matson v. Matson, 4 Met., 262; Williamson v. Yeager, 13 R., 273; 14 R., 548; Bohannan v. Same, 14 R., 912; Kalfus v. Same, 92 Ky., 542; Leahy v. Same, 17 R., 187.

Effect of Weissinger act:

2. Specific performance will not be enforced when contract is wanting in definiteness, certainty or mutuality. Jones v. Noble, 3 Bush, 694; 2 Marshall, 345; Allen v. Roberts, 2 Bibb, 98; Burton v. Shotwell, 13 Bush, 282; 100 Ind., 482; 28 Am. Rep., 550; 124 Ill., 441.

3. A contract to create a trust being executory and incomplete, without a valuable consideration, can not be enforced. Story's Equity Jurisprudence, vol. 1, sec. 433; Pomeroy, vol. 2, secs. 997-1000; Beach on Trustees, Ch. 7; Clark v. Lott, 11 Ill., 105; Badgeley v. Botfend, 68 Ill., 25; 14 R., 811; 19 R., 37.

LANDES & ALLENSWORTH, FOR APPELLEE.

### POINTS AND AUTHORITIES.

1. The agreement, the specific enforcement of which in this case is sought, does not possess those essential elements and incidents which must exist in a contract before a court of equity will decree its enforcement *in specie*. (1) It is not *reasonable* or *practicable*. (2) It is not supported by a *valuable* and *adequate*, or even a *"meritorious" consideration*. (3) It is not *mutual* either in its *obligation*, or in the *remedy* for its enforcement, and (4). It is not *certain* and *definite* in regard to the property to be conveyed, and it would require parol testimony to identify it.

2. The following authorities show what is the established doctrine with reference to contracts and agreements, the specific execution of which is sought to be enforced in equity, that they must possess the elements and incidents indicated, viz.: 3 Pomeroy's Eq. Jur., (ed. 1887), secs. 1404, 1405; Woollums v. Horseley, 93 Ky. Rep., 582; Simon v. Wildt, &c., 84 Ky. Rep., 157; Butt v. Bondurant, 7 Mon., 423; Petty v. Roberts, 7 Bush, 419; Bright's Exr. v. Bright, 8 B. Mon., 197; Allen v. Roberts, 2 Bibb, 98; Jones v. Noble, 3 Bush, 697; McIntyre v. Hughes, 4 Bibb, 187; Stovall v. Barnett's Exrs, 4 Littell, 207; Buford's Heirs v. McKee, 1 Dana, 107; Ford v. Ellingwood, 3

Met., 359; Arnold v. Park, 8 Bush, 3; Cotton, Trustee, v. Graham, &c., 84 Ky. Rep., 672; Northup v. Ward, 12 Ky. Law Rep., 735; Northup v. Standifer, 15 Id., 740; Ray v. Talbott, 23 Ky. Law Rep., 572, decided June 7, 1901; Tyler v. Onzts, 93 Ky. Rep., 331; Jones v. Tye, Ibid., 390.

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

Appellant Birdie Moayon and appellee, Max Moayon, are husband and wife. They have two children, who are infants. The Fidelity Trust & Safety Vault Company is the guardian of these children. Prior to December 4, 1900, there was a separation of these parties on a ground, as is alleged, which entitled the wife to a divorce *a vinculo*. It is not material to this decision as to the nature of this cause. The wife had retained counsel, who had prepared for filing a petition for divorce from appellee. On the 4th of December, 1900, at the instance of appellee, the parties treated for a settlement of their differences, resulting in a contract in writing between them, which we copy in full, as follows:

"This agreement, made and entered into this fourth day of December, 1900, by and between Max J. Moayon and his wife, Birdie Moayon, and the Fidelity Trust & Safety Vault Company, trustee for Beatrice and Jessamine, children of the said Max and Birdie Moayon, witnesseth: That whereas, the said Max and Birdie are now, and have been for some months past, living separate and apart from each other; and whereas, the said parties have this day agreed mutually to forego their differences, and to be reconciled, and live with each other as husband and wife, after the full execution of this agreement. Now, and in view of the fact that the parties have agreed that a settlement is to be made upon the said children by the said Max Moayon, in order to insure a sufficient estate for them and for their maintenance, education, and support, and the

Moayon v. Moayon.

future welfare, now in consideration of the love and affection which the said Max Moayon bears the said children, Beatrice and Jessamine, and in consideration of one dollar in cash in hand paid, the receipt of which is hereby acknowledged, and in consideration of the acceptance of the trust by said Fidelity Trust & Safety Vault Company under this agreement, the said Max Moayon hereby agrees to convey, transfer, and deliver in fee simple to the Fidelity Trust & Safety Vault Company, as trustee, for the use and benefit of the said Beatrice and Jessamine Moayon, his children, one-third of all of his estate, real, personal, or mixed, of whatever kind or nature, belonging to him in his own right, which he acquired under the will of Hannah Moayon, his mother, as well as all the other estate otherwise acquired or now owned by him; the said personal property to be delivered according to the rules of law, and the real estate to be conveyed by deed properly acknowledged and recorded as soon as the deeds can be prepared. The absolute estate is to be conveyed to said trustee for the use and benefit of the said children, and in the event of the death of either of said children the estate of such child shall go to and belong to said Birdie Moayon, for her own sole and separate use forever. Said trustee shall have the authority to collect all income from said estate so conveyed, and pay the same over to the said Birdie Moayon for the use and benefit of the said children's care and education. She shall not be required to render any account of the moneys thus received by her, but her receipt shall be an absolute acquittance of the trustee. Said trustee shall be authorized to convey, sell, exchange, or dispose of any part of the estate so conveyed, and transfer a fee simple title, whenever the said trustee deems it proper to do so, and conveyance by the said

trustee shall convey the fee simple title, and the said trustee shall hold the proceeds received from any such conveyance for the same use, purposes, and to the same extent and in the same manner as the original estate is held under this agreement. It is agreed between the parties that within ten days a full inventory of all the estate of the said Moayon shall be delivered to the said Birdie Moayon and said Fidelity Trust & Safety Vault Company, and the deeds executed in accordance with this agreement, and the transfers of personalty made in accordance with the terms of this agreement and to carry into full effect the same. Witness the hands of the parties this 4th day of December, 1900, at Louisville, Kentucky. Max J. Moayon. Birdie Meyers Moayon.

"The Fidelity Trust & Safety Vault Company joins in the foregoing arrangement for the purpose of signifying its acceptance of the trust to be created by the deed of conveyance contemplated by its terms. Fidelity Trust & Safety Vault Company, by John W. Barr, Vice President."

The foregoing facts are gathered from appellant's petition filed in this case seeking a specific performance of the above contract, it being also alleged that in pursuance thereto appellant Birdie had forgiven the wrongs of appellee, and had returned to his home, and resumed her relations as a dutiful wife; and from the date of this contract, and in performance of her part thereof, had continued to live with appellee as his wife, and was yet doing so. It was also averred that appellee had wholly failed to comply with his part of the agreement, the one above copied, and that he refused to do so. A full description of his property, alleged to be that intended by the parties to be and that was embraced in the terms of the written contract, was given in the petition. It shows a number

of pieces of real estate in Christian county, this State, and personal property of the value of about $20,000. Appellee interposed a demurrer to the petition, which was sustained, and the petition dismissed.

In support of the judgment it is argued that the contract is unenforceable for the following reasons: (1) That it is not founded upon a valuable consideration, and that it is disfavored upon principles of sound public policy; (2) that it is indefinite and uncertain, and inequitable and unreasonable; (3) that it is lacking in mutuality of obligation and remedy on the part of the wife; (4) that the description of the property to be conveyed is not sufficiently certain, nor is it sufficiently identified to satisfy the statute of frauds; (5) that the wife can not contract with her husband concerning her property rights, nor can she sue him therefor, other than in an action for divorce and alimony.    As a determination for appellee of any one of the questions just outlined must result in an affirmance of the judgment, we will take them up and discuss and dispose of them in the order stated.

1. It is conceded by the demurrer that Mrs. Moayon had legal grounds for her separation and divorce; that she and her husband were then living apart because of those grounds; and that she had retained counsel to prepare, and he had prepared, a suit for her seeking a divorce from her husband.    She, at her husband's solicitation, forgave his wrong, resumed a relation which he, by his conduct, had forfeited, and had no legal right to longer claim, and saved to him the costs of the threatened litigation.    Also, under the facts admitted, she was certainly entitled to recover from him substantial alimony, including maintenance for herself and children pending the action, and including a sum sufficient to enable her to employ counsel and de-

fray the costs of her suit against him.    As between other
persons, where one has a cause of action against the oth-
er, and is about to begin a suit on it, its abandonment and
satisfaction will constitute a consideration to support a
contract based upon that fact.    Clarke v. McFarland's
Exrs, 5 Dana, 48; Brown v. Buford, 3 B. Mon., 508, 39
Am. Dec., 477; 6 Am. & Eng. Ency. of Law (2d Ed.) 947,
and cases.    Nor is it even necessary that the party sought
to be charged shall have been benefited by the aban-
donment of the suit.    If the other party has thereby been
put to an irretrievably disadvantage, that fact will equal-
ly constitute what is termed a valuable consideration.
Ford v. Crenshaw, 1 Litt., 70; Gaines v. Scott, 3 Ky., Law
Rep., 418.    Becoming reconciled to the husband, with full
knowledge of his actionable offense, will be a bar, as a
condonement, to the suit of the wife for divorce, based
upon the original facts.    Independent of the question
whether the fact of the reconciliation was not of as much
value to the wife as to the husband, and that a mere claim
or right to a divorce is of no legal value, yet her right to
a settlement upon herself and children as alimony and
maintenance was a right possessing money value.    When
she abandoned and obliterated her cause for divorce in this
case, it likewise nullified her right to sue for and recover
alimony.

It is argued, though, that it is the duty of the wife, no
less than of the husband, to maintain in good faith the
marital relation; that a promise of one to pay money to
the other to continue the married relation is at best but
an agreement to pay for the performance of a duty already
undertaken for a sufficient consideration (to-wit, the mu-
tual undertaking to live together in the married state);
and that, therefore there is nothing upon which to rest

the new promise.    Were it the fact that there was no
cause for the separation, this argument of appellee would
be good.    The other side of this proposition—that is, an
agreement between husband and wife by which the former
undertook to pay the latter a stipend in consideration of
their living apart—has been before this court frequently.
In all those cases it was shown that the marital relations
had become unendurable to the parties, whether because
of statutory grounds of divorce or not was not always
shown.    The contract of the husband to pay the wife a
stipulated sum, or to convey to her certain property, was
upheld on the theory that it was the legal and moral duty
of the husband to support the wife, and that these con-
tracts were but another form of, and were in lieu of, the
original undertaking, and were consequently valid. Gaines'
Admx. v. Poor, 3 Met., 303, 79 Am. Dec., 559; Flood v.
Flood, 5 Bush, 170; Loud v. Loud, 4 Bush, 455; Evans v.
Evans, 93 Ky., 510, (14 R., 628) (20 S. W., 605).    Nor
was it held in those cases to be necessary that the suit for
divorce should be pending in order to support the agree-
ment.    It was sufficient if there was an actual or impend-
ing separation and suit for divorce.    Gaines' Admx. v.
Poor, supra.    It is the policy of the law, because it has
been found best for social happiness and progress, that the
state of marriage be encouraged.    Certainly, if an agree-
ment between husband and wife, settling the obligations
of the husband to provide for the wife, in contemplation
of their living permanently apart, will be specifically en-
forced, as being based upon a sufficient legal considera-
tion, and as being not contrary to the policy of the law,
a fortiori must be a contract between them under like con-
ditions founded on the consideration of the restoration or
preservation of the marital relation.    See Bishop on Mar-

riage, Divorce and Separation, section 1279. As said in Adams v. Adams, 91 N. Y., 381, 43 Am. Rep., 675: "While the law favors the settlement of controversies between all other persons, it would be a curious policy which would forbid husband and wife to compromise their differences, or preclude either from foregoing a wrong committed by the other." To same effect is the case of Phillips v. Meyers, 82 Ill., 70, 25 Am. Rep., 295. In Barbour v. Barbour, 49 N. J. Eq., 429, 24 Atl., 227, the wife had abandoned her husband because of certain violations by him of the marital duties. She brought suit for divorce and alimony. He sought a reconciliation. Among other inducements offered by the husband was the agreement to convey her certain real estate owned by him if she would be reconciled to him. Relying upon his assurances and promises, she did become reconciled, and again took up her former relations with him as wife. He then refused to comply with his agreement to convey her the property as he had agreed. The court, at her suit for specific performance, granted the relief prayed for. In the course of the opinion it was said: "The agreement is an agreement respecting the conveyance of land. The consideration was a valuable one. No consideration can be named of higher importance or of more solemn significance. It is difficult to measure it. Dollars and cents afford no adequate conception of the true nature of the consideration moving upon the one side to the execution of this agreement. This agreement is thus brought within every case that recognizes the doctrine of part performance in the slightest degree. Upon the part of the wife it is not only partially, but entirely, performed. She not only agreed to become reconciled to him, but in the sincerest manner, by her conduct, manifested her determination so to continue." In

addition to the foregoing, we think the principle is also sustained by the following authorities: Smith v. Smith, 35 Hun., 378; Shepard v. Shepard, 7 Johns. Ch., 57, 11 Am. Dec., 396; Casto v. Fry, 33 W. Va., 449, 10 S. E., 799. We are consequently of opinion that the contract was based upon sufficient consideration, and is not opposed to a sound public policy.

2. That the contract is definite, certain, fair, and equitable, we have no doubt. The wife agrees to abandon, and it is alleged has abandoned, her suit for divorce, and has forgiven its cause. She agrees to resume the wifely relation, and has done so in pursuance to the agreement. The husband undertook, besides his promise of a fulfillment of the conjugal duties, to convey to a named trustee one-third of all his property for the maintenance and education of their two children; it in event of their death to go to the wife. It also was provided for the management of the trust. The only serious criticism of the paper as to its indefiniteness or lack of equity, besides the matters of description and mutuality, which will be discussed further on, is the suggestion that it is unfair and inequitable to appellee to enforce a contract that may let into joint ownership with him in his property, and in his mercantile establishment, other persons probably not desirable, and whose interference would jeopardize if not destroy the value of his business. As to the real property, it not infrequently happens that it is owned jointly by persons of incompatible tastes. Yet we have never before heard it urged as a defense against the specific performance of one's contract to sell an undivided interest in his land that his vendee might sell the interest to some undesirable person entailing probably a disastrous suit to

sell the whole property because of its indivisibility. Those
are questions that might properly influence one in determin-
ing whether he will sell an undivided interest in his prop-
erty.    But, after he has contracted to do so for an ade-
quate consideration, we perceive no reason why equity
should relieve him from a specific execution of his contract
on such a ground.    Upon the face of the contract, it does
not appear to us to be unfair.    It settles upon the wife's
children certainly no more than the allegations of her pe-
tition show would probably have been set apart to her as
alimony, had she prosecuted her suit.    That she saw prop-
er to have this sum settled on her children, instead of
upon herself, is not a ground for objection by appellee.

3. It is very earnestly argued that the contract should
not be enforced because of lack of mutuality in obligation
and in remedy.    It is asserted by appellee that, before
a contract will be specifically enforced in equity, it must
not only be reasonable and practicable, and supported by
an adequate consideration, and be certain and definite in
regard to the property to be conveyed, but it must be mu-
tually binding upon the parties, and the remedy for its
enforcement must also be mutual to the parties.    It is
the latter condition that we now address ourselves to.    We
concede the correctness of appellee's proposition.    Yet it
may be satisfied with less than an ideal fulfillment of
its full text.    For example, it is generally held that, un-
der the statutes of frauds and perjuries, where the con-
tract is not in writing, if one party, relying on the agree-
ment, and induced thereby, has executed his part of the
contract, the other party may be compelled to perform,
or to respond in damages if specific performance is with-
held.    Not to do so would be to make the statute enacted
to prevent frauds an instrument for effectuating a fraud.

To examine minutely that part of the agreement bearing on this question, we again quote from it: "Whereas, the said Max and Birdie Moayon are now, and have been for some months past, living separate and apart from each other; and whereas, the said parties have this day mutually agreed to forego their differences, and to be reconciled and live with each other as husband and wife after the full execution of this agreement:   Now, in view of the fact that the parties have agreed that a settlement is to be made upon the said children by the said Max Moayon, in order to insure a sufficient estate for them, and for their maintenance, education, and support and future welfare:   Now, in consideration of the love and affection which the said Max Moayon bears the said children, Beatrice and Jessamine, and in consideration of one dollar cash in hand paid," etc.   We have not rested this contract on the consideration of the "love and affection" of the father to his children (though it seems that might alone have been sufficient in this State), any more than upon the one dollar recited as having been paid.   In the case of an executed contract, reciting several matters as constituting the consideration, if any one of them is sufficient, probably that would satisfy the inquiry.   But in an executory contract, the execution of which is resisted by one of the parties, the inquiry should embrace all the matters recited as the consideration, because we can not say that the complaining party would have entered into the contract in the absence of any of the matters recited as the moving consideration for his action.   The consideration of this contract may be thus stated:   (a) The mutual agreement to forego differences; (b) the mutual agreement to be reconciled; (c) the mutual agreement to live with each other as husband and wife; (d)

love and affection of the husband for his children; (e)
$1. The last two are not questioned. Appellant Mrs.
Moayon did forego the cause of their difference. That
part of the contract is unquestionably executed. She
did become reconciled to appellee. That is executed. The
only remaining part of the contract is (c) "the mutual
agreement to live with each other as husband and wife
after the full execution of this agreement." The par-
ties saw proper to anticipate the time of execution of this
clause of the contract, and resumed their living togeth-
er before the full execution of the agreement. This was
necessarily by mutual consent, and neither party can
take advantage by complaint of that act. The case is
rested, however, on this point, upon the argument by ap-
pellee that the contract contemplated not merely going
back to their former relation, but permanently continu-
ing in it; that the wife's undertaking on this score can
not be fulfilled short of the death of one of the parties,
for, so long as they both live, she might leave him. It
is then argued that, so long as she owes him any part
of this undertaking (i. e., to live with him as his wife),
it is a duty that could not be enforced against her by
the court; that no civil court ever has attempted to com-
pel two people to so live together, no matter which was in
fault. Therefore it is claimed there is lacking that mu-
tuality of remedy necessary to the enforcement in equity
of this contract. Marriage contracts and marriage ar-
ticles have been upheld and enforced by the courts from
earliest times. They involve an agreement between a
man and woman to assume the marital relation,—to live
together as husband and wife,—in consideration of which
each relinquishes his or her claim to the other's property,
or one agrees to convey or deliver to the other certain

property or money.    If they, in pursuance of the agreement, did marry and live together as husband and wife, the contract has been considered always as executed, so far as that part of the undertaking was concerned.    It has been held that neither misconduct of a party after marriage (Moore v. Moore, 1 Atk., 272; Sidney v. Sidney, 3 P. Wms., 269; Seagrave v. Seagrave, 13 Ves., Jr., 439; Fisher v. Koontz, 110 Iowa, 498, 80 N. W., 551), nor the subsequent divorce of the parties, in the absence of some term in the contract providing against such contingency, or of some statutory regulation of the subject, affect the validity of the marriage settlement (Evans v. Carrington, 2 De Gex, F. & J., 481; Barclay v. Waring, 58 Ga., 86; Babcock v. Smith, 22 Pick., 61; Child v. Pearl, 43 Vt., 224).    Bonds for the payment of money have been enforced upon the executed consideration of marriage. Smith v. Patterson, Cheves, Eq., 29; Ancker v. Levy, 3 Strob. Eq., 197; Logan v. Wienholt, 1 Clark & F., 611.    The promise of a woman to marry a man was held a sufficient and valuable consideration to support his deed to her, where it appeared that she had been prevented from executing the promise without her fault, but by his death. Smith v. Allen, 5 Allen, 454, 81 Am. Dec., 758.    The marriage contract (that is, the agreement to marry) is complete and executed when the parties to it have entered into the married relation in the manner required by statute.    Undoubtedly every valid marriage contemplates that the parties shall live together as husband and wife "till death them do part."    In a case like the present one the agreement to live together as husband and wife could include nothing more on this point than the original vows of matrimony did.    To say that marriage was not an execution of that part of a marriage settlement between a

man and a woman, competent to marry, as would require
the performance of the other undertakings in the settle-
ment, would be to practically destroy that which for time
out of mind has been regarded as a subject of such con-
tracts, for it would necessarily postpone the execution of
the remaining part of such contracts till the death of
one of the parties; thereby substantially destroying their
value, in many instances, to the party benefited, and in-
tended to be protected by them. We must hold, in rea-
son and under the authorities, that this feature of the
contract under consideration was executed by the resump-
tion of the parties of the marital relation and duties. What
relief appellee would be entitled to, as to a restoration
of the property, or some part thereof, if Mrs. Moayon
should subsequently abandon him without cause, is a ques-
tion we do not determine.

4. Does the contract sufficiently describe the property
to be conveyed? The description in the contract is:
"One-third of all his [appellee's] estate, real, personal, or
mixed, of whatever kind or nature, belonging to him in
his own right, which he acquired under the will of Hannah
Moayon, his mother, as well as all the other estate other-
wise acquired or now owned by him." Can the intention
of the parties, and the property to be affected by the
writing, be gathered from this description? If so, the
statute is complied with. It is the purpose of the descrip-
tion of the property concerning which a contract is made,
to identify it. As said in Warvelle on Vendors, vol. 1,
section 96: "While an unequivocal description, giving lo-
cation, area, and boundaries, is a literal and perfect ob-
servation of the rule, a less particular statement will us-
ually suffice, provided it contains within itself the proper
means of identification, as by reference to extrinsic facts

Moayon v. Moayon.

or other instruments by means of which the land can be ascertained with sufficient certainty." The ideal, perfect description is preferred. But we can not compel its adoption. It is our business to treat with such contracts as the parties have made, enforcing them when lawful and practicable. It is not necessary, then, that the writing should do more than indicate clearly what property is to be affected by it, if its description or identification can be gotten from the contract, or from any extrinsic fact or writing referred to in the contract. A portion of the property may be identified by the will of Hannah Moayon, specifically referred to in the contract. It is necessarily of record to be a will, and that record will satisfy so much of the contract as treats of so much of appellee's property as derives its title from that source. The remainder of the description is: "All the other estate otherwise acquired or owned by me." In Warvelle on Vendors, section 135, it is said that a description as "my house and lot" imports a particular house and lot, rendered certain by the description that it is the one that belongs to "me." The following descriptions have been held sufficient: "My lot on the plat in the town of S., on the plat of said town, on the river bank" (Colenck v. Hooper, 3 Ind., 316, 56 Am. Dec., 505); the "Snow farm" (Hollis v. Burgess, 37 Kan., 487, 15 Pac., 536); "H's place at S." (Hodges v. Kowing, 58 Conn., 12, 18 Atl., 979, 7 L. R. A., 87); the "Knapp home property" (Goodenow v. Curtis, 18 Mich., 298); an agreement to convey land described as "occupied" by the vendor or a third person (Angel v. Simpson, 85 Ala., 53, 3 South., 758; Towle v. Carmelo Land & Coal Co., 99 Cal., 397, 33 Pac., 1126; Doctor v. Hellberg, 65 Wis., 415, 27 N. W., 176). In all such cases parol evidence was admitted not to identify, but to desig-

nate, the subject-matter, already identified in the minds
of the parties, in the language of the contract when read
in the light of the facts. In this State, in Overstreet
v. Rice, 4 Bush, 3, 96 Am. Dec., 279, the expression, "We
have swapped farms," naming the terms, but without fur-
ther description of either farm, was held sufficient, after
the parties had themselves identified the lands intended
to be affected, by taking possession of them. In Ellis v.
Deadman's Heirs, 4 Bibb, 466, the writing was: "4 Jan-
uary, 1808. Received of Jesse Ellis $——, in part pay
for a lot he bought of me in the town of Versailles; it be-
ing the cash part of the purchase of said lot. Nathan
Deadman," This court said: "Had the receipt specified
the terms of the agreement, there would have been no
doubt of the propriety of decreeing the specific execution."
It is as essential that the terms be specified as the descrip-
tion of the property. "Ten acres adjoining him on the
north," in a bond for title to land of the vendor adjoining
the vendee, was held sufficient in Hanly v. Blackford, 1
Dana, 2, 25 Am. Dec., 114. In Henderson v. Perkins, 94
Ky., 211, (14 R., 782) 21 S. W., 1035), the description
was, "my home place and storehouse." It was held suffi-
cient, on the authority of Ellis v. Deadman's Heirs, supra,
and Hanly v. Blackford, supra. In the case of Varnum
v. State, 78 Ala., 28, the description was: "My entire
crop of every description, raised by me, or caused to be
raised by me, annually till this debt is paid." While that
was not concerning real estate, it was such a contract (one
not to be performed within a year) as was, by the stat-
utes of frauds, required to be in writing. Concerning that
description that court said: "It is objected to the admis-
sion in evidence of this mortgage that it was void for un-
certainty in the description of the crops intended to be

included in it.    Whatever force there may be in this ob-
jection to the instrument on its face, this alleged uncer-
tainty was capable of being removed, when read in the
light of the circumstances surrounding the contracting
parties at the time of its execution, by extraneous parol
identification."    Parol evidence can not be introduced to
vary, enlarge, or restrict the written terms of the contract.
But frequently it is the case that application of appar-
ently vague descriptions must be by parol testimony,
which puts before the court the facts and circumstances
surrounding the parties when the contract was made or
is to be executed, that its terms may be interpreted by
the light from such surroundings.    From this rule springs
the maxim, "That is certain which can be made certain."
In this case it has been said, "all" means all.    "All of
my land" is a description, by necessary implication and
common understanding, referring to such lands as I may
own, evidenced by the public records where land titles are
required to be recorded, or to my actual and continuous
possession for such time as under the law constitutes a
title.    This identification is complete, and admits of no
possibility of mistake in this case.    Applying to it the fa-
miliar usage of the courts in such matters, parol testi-
mony may be allowed to designate the particular proper-
ties described and identified by the writing, and in the
contemplation of the parties in making the contract.

5. It is true that, by the common law, contracts between
husband and wife were void.    Yet equity recognized num-
erous instances in which the parties had peculiar property
rights which they were allowed to personally control, and
to make contract concerning.    It would be an anomaly
and a reproach to the law to say that it recognizes a le-
gal property right in one, to whom all the doors of every

court were closed.    Therefore it was early held (Story's Eq. Jur., 1372) that, although contracts between husband and wife are void at law, they are not always so in equity. This court has repeatedly affirmed the same doctrine.    In Evans v. Evans, 93 Ky., 510, 14 R., 628, 20 S. W., 605, it was said: "Generally, if a contract between husband and wife merely be just and reasonable, and would be good at law when made by the husband with a trustee for the wife, it will be upheld in equity."    This case was followed in Bohannon v. Travis, 94 Ky., 59, 14 R., 912, 21 S. W., 354.    In Ward v. Crotty, 4 Metc., 59, it was affirmed that the husband's contract with the wife would be specifically enforced against him in equity, without the intervention of a trustee.    This has been adhered to in Maraman's Admr. v. Maraman, 4 Metc., 89, and Campbell v. Galbreath, 12 Bush, 459.    It is further re-enforced by legislative enactment looking to the same end, viz., section 34 of the Civil Code, as follows: "In actions between husband and wife; in actions concerning her separate property; and in actions concerning her general property, in actions for personal suffering or of injury to her person and character, in which he refuses to unite, she may sue or be sued alone."    The wife may maintain her action.

It follows that the judgment must be reversed, and the cause is remanded for further proceedings not inconsistent herewith.