EUGENE R. SUMMERS *et al. v.* COLLISON ORT, *Exr. et al.*

(No. 7031)

Submitted March 29, 1932. Decided April 12, 1932.

*A. M. Belcher* and *J. T. Reynolds,* for appellants.
*Dillon, Mahan & Holt,* and *Price, Smith & Spilman,* for appellees.

WOODS, JUDGE:

This suit was brought primarily to restrain the sale of a parcel of land under a certain trust deed given by Clara B. Summers for the purpose of indemnifying George Ort, trading and doing business in the firm name and style of Kanawha Cash Groceries, in the faithful performance of the part of Eugene R. Summers, in the operation of a branch store, of all of the terms and conditions contained in a written agreement between the two last-named parties. The bill of complaint, which recognizes that the branch store was operated, according to Ort's account, at a loss of $6,145.27, within the year, charged that the contract and the deed of trust were both entered into by reason of the false and fraudulent misrepresentations made to plaintiffs by George Ort through his agents and representatives, acting within the scope of their employment; and, that the contract was void, unjust

130

and unreasonable and should have no standing in a court of equity. An answer was filed, putting in issue all the material allegations of the bill. The chancellor, after considering the depositions, found that the alleged fraud had not been proved, that the contract and deed of trust were valid and subsisting obligations upon the respective parties thereto, and dismissed the plaintiff's bill.

It appears from the record that Ort owned a chain of cash grocery stores, each of which was operated under contract by a "general manager". According to the contract in the instant case, Ort, trading, etc., was to furnish stock not to exceed $5,000.00 to store No. 42, and Summers was to have charge as general manager thereof, and was "to conduct the business to the best advantage in every respect under the general supervision and direction of" Ort. The latter was to purchase for and sell to store No. 42, according to a certain scale, and No. 42 was to retail at the same prices as store No. 2. The contract contained the further proviso: "It is further understood and agreed that the said Eugene R. Summers, party of the second part, is to receive a monthly, compensation or salary of One Hundred Twenty-five ($125.00) Dollars per month, as active manager of said Store No. 42, for such time as he devotes his entire time and attention to said store and business. The salary of the said party of the second part may be increased at any time commensurate with the profits of the business. After said salary and all over-head expenses are paid, then the net profits of said Store No. 42, are to be divided between the said party of the first part and the said party of the second part on a 50-50 basis. However, should the business show a loss, the said party of the second part is to secure and pay to the said first party all losses that the business may show." The receipts of the business of store No. 42 were to be deposited subject to check or to be drawn upon by either of the parties. And in the last paragraph, the contract provides: "This agreement is to be enforced for a period of one year, and so long thereafter as is mutually agreeable to the parties thereto. In the event, however, of the business showing a loss the said party of the first part may, at his option, discontinue

said business at any time before the first year has expired or at any time thereafter."

By the contract the plaintiff, Summers, virtually assumed all the hazards incident to an independent grocer in taking over a business, with no chance of escaping therefrom, for one year, loss or no loss, if Ort did not see fit to relieve him of his contract. If, as counsel for plaintiffs contend, such condition was sufficient to warrant a court of equity in setting a contract aside for lack of mutuality, can the plaintiffs now rely on it after the year has expired and all the losses incurred? We think not:

The representations relied upon by the plaintiffs were that store No. 42, at 218 Charleston Street, was a plendid proposition; that other parties who had operated the store had made a pile of money; that Sigman had cleared $900.00 in one year; and that Cole had made money in the operation of the store. Mrs. Summers, Eugene R. Summers and J. E. Summerfield testified that E. A. Stone made such representations, and Eugene R. Summers stated that he found later that same were false. However, neither Sigman nor Cole were called to contradict the statements claimed to have been made by Stone. The latter stated that he merely directed Summers, who was looking for a position, to see Mr. Ort, who might have something. He further stated that his only connection with the whole affair was in drawing up the papers, and having them executed. Eugene R. Summers testified that at the end of three months he saw the business was losing money, although the statement issued by Ort showed a gain, and that he tried at that time to get released, but was compelled to continue until the expiration of the term. Sigman and Cole, although within reach, were not called for the purpose of showing that such alleged statements were false.

Under the decisions in this state, equity will not cancel a contract between two parties competent to contract, and between whom no confidential relation exists on the sole ground that its terms are unconscionable and unfair. *Billups* v. *Montenegro-Rheims Music Co.*, 69 W. Va. 15, 70 S. E. 779. So, we are confronted with the proposition of whether

or not the mere statements of Eugene R. Summers, Clara B. Summers and J. E. Summerfield, to the effect that Stone made representations to them that the business had yielded a profit during the year next preceding the execution of the contract, sufficient, under the particular circumstances in this case, to cast the burden upon the defendants of showing that the business had actually been conducted at a profit.

Where persons stand on common ground and are equally able to form judgments and contracts with each other, the burden rests upon the party asserting undue influence or fraud of proving it. However, in cases of a fiduciary relationship, as between guardian and ward, principal and agent, and the like; and indeed, all persons who occupy a position of trust and confidence, or influence and dependence, in fact, although not perhaps in law, a different principle applies. The law is well founded that "wherever two persons stand in such a relation that, *while it continues,* confidence necessarily reposed by one, and the influence which naturally grows out of that confidence is possessed by the other, and this confidence is abused, or the influence exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of his position will not be permitted to retain the advantage, although the transaction could not have been impeached if no such confidential relation existed." 2 Pom. Eq. Juris., (4th Ed.), sec. 956. The chancellor looks to the substance of things, and welcomes aids and construction to afford just results. We are of opinion that it would be a too literal interpretation of this wholesome provision of the law to hold that the confidential relation between Ort and Summers did not arise before the signing of the contract. It arose at the inception of the negotiations, i. e. at the time Stone told Summers that he had a splendid and paying proposition.

Ort was cognizant of the character and history of store No. 42 at the time of the negotiations, and had matters regarding gains or losses at his disposal. Summers was dependent upon the former in such matters. He was placed in charge as general manager. However, Ort, or his agents, well knowing the business, inserted a provision in the con-

tract that Summers pay all losses. Ort was given the privilege of terminating the contractual relationship at any time, while Summers was bound to one year, no matter how onerous and burdensome the duty might become. Taking the most liberal view, the relationship of principal and agent existed in fact, if not in law, from the beginning of negotiations.

Before the year expired, the business showed losses in excess of $6,000. Ort seeks to recover this amount by sale under the deed of trust. Summer retorts that the prior managers of store No. 42 had lost money for two years preceding, whereas it had been represented not only to him but to his mother, and to her attorney, that the business had been a profitmaking one. His mother was given the additional assurance, by Stone, that Ort would not permit the business to fail, and that if he saw it failing, he would, under the contract, step in and save the day. She signed the deed of trust evidently on the faith of such assurance. To have signed the paper on any other understanding would be unbelievable. All these circumstances, however, are incidental, and not essential. Where an antecedent fiduciary relation exists, as here, a court of equity will presume confidence placed and influence exerted. The doctrine of equity concerning undue influence is very broad, and is based upon the principles of the highest morality. It reaches every case, and grants relief ''where influence is acquired and abused, or where confidence is reposed and betrayed.'' *Parker* v. *Hill*, 85 Ark. 363. The undue influence being established as a fact, any contract obtained by its means is voidable, and may be set aside without the necessary aid of any presumption. The broad principle on which the court acts in cases of this description is, that wherever there exists such a confidence, of whatever character that confidence may be, to enable the person in whom the confidence or trust is imposed, to exert influence over the person trusting him, the court will not allow any transaction between the parties to stand, unless there has been the fullest and fairest explanation and communication of every particular resting in the

breast of the one who seeks to establish a contract with the person so trusting him. But it may be urged that the defendant was disposed to be liberal, and that the court will not prevent his being so, and no doubt this court will not prevent him from doing so if such were his intention. But the law says that intention on his part imports knowledge, and liberality imports the absence of influence; and where something is set up between parties standing in a confidential relation which is one-sided (such as, where one pays all losses of a business intrusted to his charge), a one-sided unconscionable agreement, the onus of establishing it rests upon the one who asserts under the agreement. In this case, Summers says that the losses incurred and for which Ort seeks to mulct him and his mother by the sale of her home were through no fault of his own, but that he gave all his talents and integrity to make the business a success without avail. He thus shifted to the shoulders of Ort the duty of producing evidence to establish the contract under which he seeks to recover. So, viewing the case, we reverse the circuit court, declare the contract void, and reinstate and perpetuate the injunction restraining the sale under the deed of trust.

*Reversed; entered.*