EDMUND G. MARSHALL,

*Appellee*

*v.*

JEAN A. MARSHALL (HAMILTON),

*Appellant*

(No. 14788)

Decided December 19, 1980.

*Leo Catsonis, Morton I. Taber, and Michael T. Clifford* for appellant.

*J. W. St. Clair and W. Merton Prunty* for appellee.

MILLER, JUSTICE:

This appeal involves the validity of a real estate and stock transfer between a husband and wife. The transfer was part of an alleged oral reconciliation agreement made between the parties in September of 1970. The trial court found that the husband, the appellee, had met his burden of proof in showing that his former wife, the appellant, had voluntarily conveyed the property to him. The wife urges that the ruling is erroneous in that the record shows that the husband violated his fiduciary duty to her and did not meet the statutory burden of showing the transfer lawful. W. Va. Code, 48-3-7.* We agree and reverse.

The parties were married in 1954 and during most of their marriage they resided in Huntington, West Virginia, where the husband practiced law. The couple had three children before they finally separated in December of 1971. During their marriage, they accumulated some real property in and around Huntington, which consisted of the family residence and a 40-acre farm. They also owned several hundred shares of stock. Most of the property was jointly owned by the parties but some shares of stock were owned by the wife only.

Around 1969, the parties began experiencing some problems with their marriage. Each accused the other of engaging in marital misconduct and in May 1970 the parties began to see a psychiatrist, a Dr. Hibbard, in hopes of improving their relationship. According to Dr. Hibbard's testimony, the appellant was experiencing a period of emotional distress. He advised her not to make any major

---

* W. Va. Code, 48-3-7, provides:

"Subject to the provisions of section nine [§ 48-3-9] of this article, any conveyance or transfer of property, or any interest therein executed by either husband or wife to or in favor of the other, directly or indirectly, shall be valid to the same extent as between other persons; but if any such conveyance or transfer shall be directly attacked, by the person making such conveyance or transfer, or his or her heir, devisee or creditor, the party in whose favor it was made shall have the burden of showing that such conveyance or transfer was in all respects lawful and valid."

decisions; and, he prescribed Sinequan, an anti-depressant, for her. At one point, he recommended to her husband that she be hospitalized.

After a period of separation, the parties attempted to reconcile in August of 1970. The husband would not agree to a reconciliation with his wife, however, unless she conveyed all her interest in the real property and stocks to him. While there was some discussion of this transaction, the extent of any negotiations is not clear. The wife says her husband just presented the deeds he had prepared and the stock certificates and said, "Sign them right now or that's it." The husband says that he gave his wife between ten days and a month to consider the transaction and he introduced evidence that the appellant discussed the transfer with her sister. Both parties do agree that she never saw an attorney before the transaction was completed in September of 1970.

After this transfer of property, the parties resumed marital relations for an undisclosed period. From the record, it appears that the couple had not achieved a reconciliation as they continued to fight and periodically live separately. The couple separated for the last time in December of 1971 and the husband filed for a divorce in January of 1972. Shortly thereafter, his wife filed a counterclaim for divorce. The wife was awarded a divorce on her counterclaim and she was granted custody of the three children. After a later hearing, the court ordered that the property transaction be set aside as null and void and all property was ordered reconveyed to the wife. The transcript for this hearing was lost so a new hearing was held in order that an appeal could be taken. A second evidentiary hearing was held but no decision was rendered by Judge Ray, before he died in office. Instead, this case was ultimately decided by another judge based upon the evidentiary transcript taken before Judge Ray.

The wife argues that the trial court erred in finding that her husband had met his burden of proof created by W. Va. Code, 48-3-7, a part of our Married Women's Act. This statute places the burden on the spouse who receives property from another spouse to show that the transaction

was lawful and valid. The husband admits that the only consideration given for the transaction was the promise to reconcile and forbear suing her for divorce and points to law which indicates that the giving up of a well-founded divorce action may be sufficient consideration for a property transfer between husband and wife. *Moayon v. Moayon,* 114 Ky. 855, 72 S.W. 33 (1903); *Polson v. Stewart,* 167 Mass. 211, 45 N.E. 737 (1897); *Mack v. Mack,* 87 Neb. 819, 128 N.W. 527 (1910).

The primary purpose of W. Va. Code, 48-3-7, is to place the burden of proof on the spouse who profits by the transfer if the other spouse attacks the bona fides of the transfer. The statute requires a showing that the "transfer was in all respects lawful and valid." *Young v. Young,* 139 W. Va. 290, 82 S.E.2d 54 (1954). It is analogous to the burden-shifting rule where the parties are in a confidential relationship. In such situations, the law requires that one who receives property from another with whom he has a confidential relationship has the burden of showing that the transfer was fair and made with the utmost good faith. *Kanawha Valley Bank v. Friend,* 162 W. Va. 925, 253 S.E.2d 528 (1979); *Work v. Rogerson,* 152 W. Va. 169, 160 S.E.2d 159 (1968); *Summers v. Ort,* 112 W. Va. 129, 163 S.E. 854 (1932).

Independent of this statute we have held that the relationship between husband and wife is one of confidence and trust. *Gieseler v. Remke,* 117 W. Va. 430, 185 S.E. 328 (1936); *Williamson v. First National Bank,* 111 W. Va. 720, 164 S.E. 777 (1931); *Morris v. Westerman,* 79 W. Va. 502, 92 S.E. 567 (1917). This recognition of the confidential relationship between married persons is a rather universal rule. *Francois v. Francois,* 599 F.2d 1286 (3rd Cir. 1979), *cert. denied,* 444 U.S. 1021, 62 L.Ed.2d 653, 100 S.Ct. 679 (1980); *Kulchar v. Kulchar,* 1 Cal.3d 467, 462 P.2d 17, 82 Cal. Rptr. 489 (1969); *Eubankes v. Eubankes,* 273 N.C. 189, 159 S.E.2d 562 (1968); *Putnam v. Putnam,* 274 Ala. 472, 150 So.2d 209 (1963); *Bohn v. Bohn,* 420 S.W.2d 165 (Tex. App. 1967); 41 Am.Jur.2d *Husband & Wife* § 270 (1968); 41 C.J.S. *Husband & Wife* § 120 (1944).

Consequently, the issue in this case cannot be resolved merely on the basis of determining whether there was

adequate consideration for the transfer, but must be resolved in the larger context of our fiduciary rule to ascertain the essential fairness of the transfer. We conclude that the trial court erred in not applying this broader standard and had it been applied the transaction would have been set aside.

We do not believe from a factual standpoint that the husband's claim of giving up a valid claim for divorce can carry his burden of showing adequate consideration in this case. This is because he did not give up the claim but filed for a divorce against his wife after he had benefited from the transfer of the property.

However, beyond the consideration argument, it is clear from the record that the husband did not meet the fiduciary standard of demonstrating that his wife's transfer of the property to him was done in the "exercise [of] scrupulous good faith toward the other." *Kersey v. Kersey*, 76 W. Va. 70, 79, 85 S.E. 22, 25 (1915).

The property transfer arose at a time when the parties' marriage was breaking up. The record is undisputed that the wife was extremely distraught during this period and was under psychiatric treatment. Her husband was an attorney and must have known the favorable position that he would have in the event of a divorce if he was able to have his wife transfer to him not only her interest in the jointly held property but her own property as well.

There is rather clear evidence that the husband imposed a deadline for the wife to agree to his terms on reconciliation. No suggestion was made by him that she should seek independent advice of counsel and the record is clear that she did not see an attorney prior to transferring her property to him. The general rule is that where persons occupy a fiduciary or confidential relationship the lack of independent advice on the part of the person who claims to be disadvantaged by the transaction may be a significant factor in court's evaluation of the overall bona fides of the transaction. *Peyton v. William C. Peyton Corp.*, 23 Del. Ch. 321, 7 A.2d 737 (1939); *D'Arc v. D'Arc*, 164 N.J. Super. 226, 395 A.2d 1270 (1978); *McCarty v.*

*McCarty*, 300 S.W.2d 394 (Mo. 1957); *Whitney v. Seattle-First National Bank*, 90 Wash.2d 105, 579 P.2d 937 (1978); Annot., 123 A.L.R. 1505 (1939). Here the problem is made more acute by the husband being an attorney.

Even the husband's alleged reconciliation proved to be more illusionary than real since the husband resided with her and the children only intermittently after he received her property until he filed for a divorce against her in January of 1972. It can hardly be doubted that the wife received nothing of value in return for her transfer of her own as well as her jointly held property. Consequently, we conclude that the husband did not meet the burden required by our fiduciary standard to show that he exercised the utmost good faith in inducing his wife's transfer of her property to him.

For the foregoing reasons the decree of the Circuit Court of Cabell County is reversed and this case is remanded for further proceedings not inconsistent with this opinion.

*Reversed and Remanded.*