RENDERED: JUNE 16, 2022
TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0395-DG

HENRY GRAY                                             APPELLANT


V.

ON REVIEW FROM COURT OF APPEALS
NO. 2019-CA-0284
BELL CIRCUIT COURT NO. 17-CI-00396


FRANK STEWART; WILLIAM S.                        APPELLEES
STEWART, JR.; LEISA STEWART;
AND MARY D. STEWART


**OPINION OF THE COURT BY JUSTICE HUGHES**

**<u>AFFIRMING</u>**

This is a real property breach of contract case in which the trial court, considering parol evidence, concluded that the contract satisfied the statute of frauds by sufficiently identifying the property to be conveyed. The Court of Appeals reversed that decision, but based upon the trial court's findings of fact, concluded that one co-owner of the property, Appellee Frank Stewart, conveyed his property interest under the merger doctrine. This Court granted discretionary review to determine whether the contract satisfies the statute of frauds. We conclude that the contract does not sufficiently identify the boundary of the property to be conveyed and, accordingly, we affirm the Court of Appeals' decision on that issue. Despite the contract's failure to satisfy the statute of frauds, the Court of Appeals' holding that Frank Stewart conveyed

his property interest to Appellant Henry Gray by virtue of the merger doctrine remains binding because Frank did not cross-appeal that adverse decision by way of a cross-motion for discretionary review. Ultimately, we conclude that the parties' ownership interests remain as decided by the Court of Appeals and further affirm that court's decision reversing the trial court's damage award in Gray's favor. We also address both lower courts' failure to consider the Stewarts' consistent demand for a jury trial, an issue which undermines Gray's alternative argument that Appellees William and Mary Stewart also conveyed their property interests pursuant to the merger doctrine.

## FACTUAL AND PROCEDURAL BACKGROUND

Henry Gray, the buyer, entered into a real estate contract with Frank Stewart, his brother William Stewart, and William's wife, Mary Stewart, the sellers, in September 2017. The contract's opening line states: "Whereas, Sellers are the owners of certain real property located near Balkan and Calloway, in Bell County, Kentucky (the "Property"), and Sellers desire to sell and Buyer desires to purchase the Property." The contract lists twelve items of agreement, the pertinent being:

1. Buyer agrees to pay, and Sellers agree to accept, the sum of $80,000 for the Property.

2. The parties have agreed on the boundaries of the Property to be transferred, but are unable to determine the precise acreage thereof or to prepare a written description of the Property sufficient for recording purposes. Therefore, the parties agree to employ Neil Grande . . . to survey and prepare a written description of the property. The parties agree to share the surveying cost on a 50/50 basis . . . .

2

3. Buyer has otherwise examined the Property, is satisfied with its condition, and is willing to accept the Property "AS IS."

4. Sellers will transfer the Property to Buyer . . . conveying all of their right, title and interest in and to the Property to Buyer. . . .

5. Sellers represent to Buyer that there are no outstanding, enforceable contracts or leases affecting the Property, except for a lease in favor of Gatliff Coal Company.  Gatliff has previously mined a portion of the Property and retains the right to come upon the Property for reclamation purposes . . . .

. . . .

12. This Contract constitutes the entire written understanding of the parties . . . .  This Contract may not be modified or amended except in writing, signed by each [o]f the parties hereto.

Grande completed his work in October 2017 and a deed of conveyance for 411 acres was prepared, the twenty-page property description appended. The attachment describes four tracts: tract 1 composed of 257.68 acres, tract 2 composed of 92.43 acres, tract 3 composed of 41.25 acres, and tract 4 composed of 19.74 acres.

On November 21, 2017, Gray tendered a check for $80,000 to Frank, who then signed the deed.  Gray next took the deed to Lexington to obtain the signatures of William and Mary.  William and Mary refused to sign the deed. Gray testified in his deposition that on the day Frank signed the deed and that day only, in order to get the deed fully signed, he agreed to pay an extra $15,000 and to pay for the survey in full.  He also testified that William agreed to sign the deed if Gray would bring the $15,000 with him.  Gray stated that he told William he would return with $15,000 after William signed the deed but

3

that when he met William to sign the deed, William refused to sign it until he got the cash. The deed signed only by Frank was recorded November 27, 2017.

On the same day the deed was recorded, Gray filed a complaint in Bell Circuit Court against Frank, William and Mary (the Stewarts), alleging breach of contract and requesting specific performance and damages. The Stewarts, in their respective answers, denied that the parties entered into any contractual agreement, denied that the parties reached an agreement as to the boundary of any property, and relied upon the statute of frauds as an affirmative defense. They demanded a jury trial.

After the trial court denied Gray's motion for a judgment on the pleadings or partial summary judgment, a trial date was scheduled. About two weeks before the jury trial was to begin, the Stewarts filed a motion to reschedule the trial due to medical reasons. Gray then requested the legal issues relating to enforcement of the contract and specific performance be submitted to the trial court and if warranted afterward, further proceedings on the damage claims could follow. As discussed below, Gray's request and the order granting it became another point of dispute between the parties.

Gray moved for judgment on his breach of contract claim on two bases: the parties' performance under the contract and the contract's enforceability under the statute of frauds. Gray asserted that if the trial court did not enter judgment as a matter of law on the executed contract, the trial court could, under the statute of frauds, look to parol evidence to resolve the boundary dispute.

4

More particularly, Gray requested judgment against Frank based on the doctrine of full performance of the contract; Gray asserted that the question of the boundary agreed to is determined as a matter of law through Frank's acceptance of the purchase money and signing the deed containing the 411-acre survey description. Gray requested judgment against William and Mary under the doctrine of partial performance, pointing to William and Mary's partial performance by receipt of the $80,000 purchase price through Frank. Gray argued that the primary difference from Frank is that William and Mary failed to sign the deed after their demand for money beyond the contract price was refused by Gray. With no writing agreeing to the modification of any terms of the contract, Gray argued the Stewarts should be estopped from delaying further their obligations under the contract.

Gray also argued that with the statute of frauds satisfied, the actions and other writings of the parties explained the intent of the parties at the time of contracting and designated the property boundary on which the parties agreed. Particularly, Gray pointed to the parties' pre-contract use of a Gatliff Coal Company Mining and Reclamation Plan Map which showed all of the Stewarts' property at Balkan; Grande's engagement letter describing the boundary to be surveyed as "the boundary owned by the Stewarts as shown on the coal permit map of Gatliff Coal Company that we have previously discussed, lying south of Kentucky Highway 119 and on both sides of Kentucky 2012 in Bell County, Kentucky"; and certain contract provisions as reflecting Gray's intentions at that time. Gray characterized Frank's position on the real

5

property—that he intended to sell to Gray three separately taxed tracts consisting of about 250 acres, and that the tracts were measured by Grande in one tract of 257.68 acres—as contradictory to Frank's other testimony about the map, the survey, and Grande. Closing his initial arguments and in reply to the Stewarts' arguments that they had not agreed to a bench trial on liability issues, Gray reiterated that the court could choose to decide this case on the facts since the issues were under submission for judgment.

The Stewarts, recounting defenses cited in their answers, responded that there were genuine issues of material fact to be decided by a jury regarding the formation and existence of a contract. The Stewarts asserted there was no meeting of the minds as to what property was to be sold because of mutual mistake, patent ambiguity of the contract, and lack of satisfaction of the statute of frauds. They also argued that the boundary the parties intended to convey and whether the parties had a meeting of the minds on the boundary remained a question for the jury, citing Frank's affidavit in support.

As to Gray's argument that the contract had been completed, the Stewarts contended that the question whether they assented to the conveyance of 411 acres was also a question for a jury. The Stewarts pointed to Gray's deposition testimony to show that when Gray asked Frank to sign the deed, Frank "said there was more acres than we had agreed on." The Stewarts also cited Gray's deposition to show that Gray agreed to pay $15,000 more and to pay the surveyor bill in full. Because William refused to sign the deed until the extra money was received, the Stewarts contended Frank's signature on the

6

deed made a conditional delivery of the deed at best, and that was also an issue for the jury.

While the parties both advanced questions of law to resolve the contract dispute in their favor, both parties agreed, or at least Gray was willing to concede, that if the trial court reached the question of whether the contract met the statute of fraud requirements and decided as a matter of law that it did, the intended size of the boundary remained a question of fact.

The trial court entered judgment in favor of Gray. Beginning with the question of whether the contract was not enforceable under Kentucky's statute of frauds because it did not sufficiently identify the property, the trial court concluded that the contract identified the property's location. The trial court then considered parol evidence[1] and found that the preponderance of the evidence was in favor of Gray[2] and there was a meeting of the minds between the Stewarts and Gray as to the entire boundary at Balkan as depicted on the Grande survey. The trial court ordered the execution of a deed to Gray and awarded Gray one-half of the surveying costs owed to him by the Stewarts.

---

[1] Rather than analyzing the Stewarts' performance under the contract as an independent basis for granting judgment, the trial court used evidence of their performance as evidence of a meeting of the minds and the Stewarts' intent to sell the Stewart boundary indicated on the Gatliff map.

Considering the writings and the parties' conduct, including the execution of the deed except for William and Mary's signatures, the trial court found that there was a meeting of the minds between the Stewarts and Gray as to the entire boundary at Balkan as depicted on Grande's survey.

[2] The trial court explained that although the Stewarts personally testified that they intended to sell 260 acres as estimated from three adjoining tracts on three specific tax bills, the Stewarts' position was refuted by expert testimony by deposition from Grande and the Bell County Property Valuation Administrator.

7

A bench trial was then held on Gray's damage claims. Gray claimed that due to the Stewarts' failure to timely convey a clear deed he lost profits from the sale of cattle he would have raised on the 111 acres east of Kentucky Highway 2012 and lost rental on the remaining 300 acres to the west. The trial court concluded that Gray's evidence established with reasonable certainty that he lost $65 per acre on the 300 acres per year in rental income during the subject 361-day period. The trial court awarded $19,286.30 in damages. No other damages were awarded.

The Stewarts appealed from both the liability and damage judgments. As noted, the Court of Appeals affirmed the trial court in part and reversed in part. The Court of Appeals concluded that because Frank signed the deed, gave it to Gray, and took Gray's $80,000 payment, the merger doctrine extinguished the contract as to Frank and Frank had legally transferred his one-half undivided interest in the real property to Gray.[3] However, because William and Mary refused to sign the deed and received no payment from Gray, the Court of Appeals concluded the merger doctrine did not apply to them. Given that conclusion, the appellate court next considered whether the purchase contract resolved the dispute as to William and Mary, i.e., whether it

---

[3] The merger doctrine was not mentioned in the briefs submitted to the trial court for its consideration when deciding issues of law, but was mentioned in the briefs submitted after the bench trial on damages.

Gray argued in his Court of Appeals' brief that with deeds in particular, the doctrine of merger controls. He maintained that with Frank having performed under the contract, the trial court correctly concluded that Frank "signed and delivered the deed," and it was then fruitless for Frank to argue that the contract was unenforceable because of its ambiguity.

8

was a legally enforceable contract for the sale of land. The Court of Appeals concluded the purchase contract did not provide a sufficient written description of the real property to identify it, and the circuit court erred by considering parol evidence to identify the property. Consequently, with the contract not being enforceable under the statute of frauds, the appellate court concluded that Gray became a co-owner of the 411 acres with William and Mary. Given its conclusion that Frank conveyed his interest in the property, and the contract was not enforceable against William and Mary, the Court of Appeals reversed the damage award.[4]

Gray moved for discretionary review in this Court. No cross-motion for discretionary review was filed, a fact of significance as to Frank Stewarts' legal position before this Court.

## **ANALYSIS**

Gray argues the Court of Appeals erred by concluding that the contract does not satisfy the statute of frauds. He insists the appellate court fundamentally misconceived the requirements of the statute, significantly restricting the understanding of what is necessary to "identify" a tract of property for purposes of the statute of frauds.[5] Regardless, he insists the

---

[4] Because the trial court's judgment awarded judgment against the "Defendants," the Court of Appeals also stated that a damage award against Appellee Leisa Stewart was not proper since Frank conveyed his interest and Leisa has no interest in the property.

[5] While Gray also argues that the Court of Appeals exceeded its review authority when it relied upon the statute of frauds because the Stewarts did not meaningfully present the issue in their brief to the Court of Appeals, the statute of frauds, as reflected in the Stewarts' answer to Gray's complaint and the trial court's judgment,

9

Court of Appeals properly concluded that under the merger doctrine Frank conveyed his interest in the 411 acres to Gray and that a similar conclusion should have been reached as to William and Mary because Frank accepted payment not only for himself but also his brother and sister-in-law. Gray's merger argument with respect to William and Mary is predicated on the trial court's factual finding that Frank was also acting on their behalf when he accepted payment under the contract. As fully explained below, we conclude that (1) the property description in the parties' contract does not satisfy the statute of frauds; (2) Frank's failure to cross-appeal his loss in the Court of Appeals based on the merger doctrine renders that holding final as to him; and (3) the Stewarts did not waive their right to a jury trial so, contrary to Gray's argument to this Court, the trial court's factual findings cannot be the basis for application of the merger doctrine as to William and Mary.

I. **The Boundary of the Property Cannot Be Determined from the Contract, Making It Unenforceable under the Statute of Frauds.**

The Court of Appeals concluded that the contract did not provide a sufficient written description of the real property to identify it as required by the statute of frauds and that the trial court erred by relying on parol evidence for the identification. Gray argues that the Court of Appeals misconceived what is necessary in a writing to identify a tract of land for purposes of the statute of frauds. The interpretation of a contract—here, whether the contract

has been a central argument in this dispute from the outset. Upon review of the appellate briefs, we cannot agree with Gray's argument.

10

sufficiently describes the property to be conveyed—is a question of law for the courts and is subject to de novo review. *3D Enters. Contracting Corp. v. Louisville & Jefferson Cty. Metro. Sewer Dist.*, 174 S.W.3d 440, 448 (Ky. 2005) (quoting *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. App. 2002)).

While the requirements of the statute of frauds as to the description of land in a contract or memorandum for its sale may be stated in general terms with little difficulty, a review of cases applying the requirements reveal its application often presents greater difficulty, with seemingly similar fact patterns resulting in inconsistent conclusions. *See Wheeler v. Keeton*, 242 S.W.2d 1013, 1015 (Ky. 1951); *Sullivan v. Lay*, 457 S.W.2d 266, 268 (Ky. 1970). That perception may exist in part because of the appellate courts' changing views of the standard to be used to determine whether the writing sufficiently describes the real property to be conveyed.

Our predecessor Court recognized in various cases, *see, e.g., Sullivan*, 457 S.W.2d at 268, that an extensive review of the cases cited in support of the litigants' respective positions is not often beneficial given that "[c]onclusions in each case vary because of the wording, the facts, and the circumstances attending the making of the contract." We agree. Instead, we review the foundational cases and those decided subsequently which appear particularly to reflect the honing of the standard for judging the sufficiency of property descriptions and within that standard, the proper use of parol evidence. Our review reveals that *Hall v. Cotton*, 180 S.W. 779 (Ky. 1915), quoted by the Court

11

of Appeals, presents a more confining expression of the rule than subsequently-decided *Montgomery*, 191 S.W.2d 399 (Ky. 1945), a case quoted by the trial court and cited by the Court of Appeals. Although we conclude that the contract before us provided enough detail to locate the property which was the subject matter of the contract within a geographical area, the contract did not indicate with sufficient certainty the size, amount, shape, or boundary of the property to be conveyed. In short, it did not satisfy the statute of frauds.

Kentucky Revised Statute (KRS) 371.010(6) provides that no action may be brought upon a contract for the sale of real estate unless the contract or some memorandum or note thereof is in writing and signed by the party to be charged. As cases from our predecessor Court remind us, "[t]he object of the [statute of frauds] is to prevent the evil arising from parol testimony in so far as certain subjects [are] concerned, particularly that of land." *Price v. Hays*, 139 S.W. 810, 810-11 (Ky. 1911); *accord Jones v. Tye*, 20 S.W. 388, 388 (Ky. 1892) ("Therefore, [in this case,] in order to determine which piece [of land] the expression refers to, verbal testimony must be resorted to, which is clearly not permissible in this state; for it is, as said in *Harrison v. Lane*, [7 Ky. 466 (1816)], the evils arising from the admissibility of verbal testimony in such case 'it was the great object of the statute to prevent.' In *Overstreet v. Rice*, [67 Ky. 1 (1868)], and *Tyler v. Ontzs*, [93 Ky. 331 (1892)], the same rule is announced. . . . [T]o allow the controversy as to the identity of the land to be settled by the mere weight of verbal testimony would, as it seems to us, defeat

12

the very object of the statute of frauds.").[6]  However, the statute of frauds,

disallowing suit for performance of an oral land contract and requiring a

writing serving to protect the party to be charged, while perhaps requiring more

rigor in the application of parol evidence in the past, is not meant to stand in

the way of the enforcement of valid written contracts.  *See Moayon v. Moayon*,

72 S.W. 33 (Ky. 1903); *Campbell v. Preece*, 118 S.W. 373, 375 (Ky. 1909); and

*Montgomery*, 191 S.W.2d at 400.  Like other written contracts, the subject

matter of the land contract must be expressed with sufficient certainty.  *See*

*Moayon*, 72 S.W. at 37.  To be sure, "[a] contract in writing for the sale of land,

which contains no description or reference identifying the land, could not be

enforced consistently with the statute against frauds and perjuries."  *Hanly v.*

*Blackford*, 31 Ky. 1, 2 (1833).  While parol evidence is not admissible to vary,

alter, or contradict what is in writing, generally, parol "[e]vidence which is

supplementary and explanatory is admissible to remove uncertainty by

exposing it in the light of the circumstances."  *Montgomery*, 191 S.W.2d at 401.

---

[6] *See also Hayden v. McIlvain*, 7 Ky. 57, 59 (1815) ("But it should be recollected that the statute has for its object the prevention of perjuries, as well as frauds; and the danger of perjury, in permitting agreements to be set up by parol evidence, is equally great, whether such agreements have been in part executed or not.  Besides, it was not fraud in general, but that particular species of fraud which consists in setting up verbal agreements where none were in truth made, or in setting them up variant in their terms from those that really existed, which was intended to be guarded against by the statute, in prohibiting an action from being brought upon an unwritten agreement."); *Robinson v. Corn*, 5 Ky. 124, 127 (1810) ("To guard against the consequences of such contracts in the overthrow of real estate, and the change of the boundaries to land, the legislature has wisely provided the statute of frauds and perjuries, which requires those agreements to be in writing.").

Our predecessor Court decided cases in the early 1900s, *Moayon*, and *Bates v. Harris*, 138 S.W. 276 (Ky. 1911), which currently stand as primary authority for understanding whether a written contract for land is enforceable based upon its property description. However, as more challenging factual circumstances have presented themselves, it appears the rule evolved from that expressed in *Moayon* and *Bates*, to one more rigorous in its requirements, *see Hall*, 180 S.W. 779, but then later returned to that described in *Hall* as a liberal approach, *see Montgomery*, 191 S.W.2d 399.

More than fifty years have passed since this Court last decided a statute of frauds case questioning the enforceability of a contract because of an allegedly insufficient property description. *See Sullivan*, 457 S.W.2d 266. We begin with a review of primary authorities to provide the context of the rule development over time and continue with cases the parties cite as offering further guidance in this case.

In *Moayon v. Moayon*, 72 S.W. 33 (Ky. 1903), a husband and wife entered into a contract to resolve a marital dispute. *Id.* at 34. The *Moayon* Court considered whether the contract conveying "One–third of all [Mr. Moayon's] estate, real, personal, or mixed, of whatever kind or nature, belonging to him in his own right, which he acquired under the will of Hannah Moayon, his mother, as well as all the other estate otherwise acquired or now owned by him" sufficiently described the property to be conveyed, the last clause requiring the most consideration. *Id.* at 37.

The *Moayon* Court framed the analysis as:

14

Can the intention of the parties, and the property to be affected by the writing, be gathered from this description? If so, the statute is complied with. It is the purpose of the description of the property concerning which a contract is made, to identify it. As said in Warvelle on Vendors, vol. 1, section 96: "While an unequivocal description, giving location, area, and boundaries, is a literal and perfect observation of the rule, a less particular statement will usually suffice, provided it contains within itself the proper means of identification, as by reference to extrinsic facts or other instruments by means of which the land can be ascertained with sufficient certainty." The ideal, perfect description is preferred. But we cannot compel its adoption. It is our business to treat with such contracts as the parties have made, enforcing them when lawful and practicable. It is not necessary, then, that the writing should do more than indicate clearly what property is to be affected by it, if its description or identification can be gotten from the contract, or from any extrinsic fact or writing referred to in the contract.

*Id.* at 37-38.

Upon reviewing authority from other jurisdictions in which simple descriptions, ("my house and lot," the "Snow farm," the property "occupied" by the seller), were held sufficient, the *Moayon* Court noted that "[i]n all such cases parol evidence was admitted not to identify, but to designate, the subject–matter, already identified in the minds of the parties, in the language of the contract when read in the light of the facts." *Id.* at 38. The Court also reviewed Kentucky cases in which the respective courts described the property detail as insufficient or sufficient on its own or upon consideration of extrinsic facts present at the time of contracting. For example, the *Moayon* Court reviewed *Overstreet*, 67 Ky. 1 (implying "swapping farms" to lack certainty in specifying what lands were exchanged but deciding the case based upon the parties rendering this uncertainty sure by taking possession and

15

consummating the mutual exchange); *Hanly*, 31 Ky. 1 (given how the seller's and buyer's lands were situated, the description in a bond for title to land that the buyer bought ten acres "as adjoining him on the north" was sufficient); and *Henderson v. Perkins*, 21 S.W. 1035 (Ky. 1893) (finding "my home place and storehouse," although a defective description, sufficiently full for easy identification and noting there was a partial execution of the memorandum of the contract). The *Moayon* Court expressed that while parol evidence cannot be introduced to vary, enlarge, or restrict the written terms of the contract,

> frequently it is the case that application of apparently vague descriptions must be by parol testimony which puts before the court the facts and circumstances surrounding the parties when the contract was made or is to be executed, that its terms may be interpreted by the light from such surroundings. From this rule springs the maxim, "That is certain which can be made certain."

72 S.W. at 38.

Based upon these principles, and that "all" means all, the *Moayon* Court, reasoned that for the contract before it, "all the other estate otherwise acquired or now owned by [Mr. Moayon]," *id.* at 34, was a description, by necessary implication and common understanding, which referred to property ownership evidenced by the public records where land titles are required to be recorded, or to ownership through actual and continuous possession for such time as under the law constitutes a title. *Id.* at 38. The *Moayon* Court concluded that "parol testimony may be allowed to designate the particular properties described and identified by the writing, and in the contemplation of the parties in making the contract." *Id.*

16

*Campbell v. Preece*, 118 S.W. 373 (Ky. 1909), presented the question whether after the parties entered into a parol contract, two later writings which evidenced the contract sufficiently described the property conveyed. *Id.* at 374. The seller agreed to sell a tract of land situated "on the left fork of Peter Creek in Pike [C]ounty, Kentucky" in exchange for the buyer delivering to the seller $1,000 worth of timber off the property. *Id.* The first writing was a receipt signed by the seller stating that he received part payment from the buyer "on the land sold him by myself on the Shanty branch." *Id.* The second writing, signed by both parties, put down the terms of a timber contract between the parties. That writing stated that the timber was standing "on the lands that [the land seller] sold to [the land buyer] situated on the Shanty branch on the left fork of Peter creek, Pike [C]ounty, Kentucky." *Id.* The *Campbell* Court stated:

> The note or memorandum required by the statute is such written declaration of the parties to the agreement as will relieve the court from relying upon parol evidence to ascertain the subject of the contract. When the subject is established by a sufficient writing, there is then such evidence of the contract upon that score as satisfies the statute . . . . If two or more writings, signed by the party to be charged, and shown to be referable to the same subject-matter, describe the property so that it may be identified, it is sufficient.

*Id.* at 374-75.

The parties in *Campbell* did not dispute the identity of the property. The Court found that reading the two writings together, the writings established the location of the land as land on the Shanty branch on the left fork of Peter Creek, in Pike County, Kentucky, and that the boundary remained alone to be

17

ascertained.  Although the *Campbell* Court misstated the parol evidence rule as provided in *Moayon* by stating, "Parol evidence is always receivable to identify the land spoken of in the writing, but not to designate it[,]" its summary of the approach to evaluate a writing was consistent with its review of *Overstreet* (possession and mutual exchange removed uncertainty), and *Moayon* (parol testimony to designate but not identify).  The *Campbell* Court explained that:

> If the writing identifies the land, that, of course, ends the inquiry. If it does not identify it, but affords means of identification, that is deemed sufficient.  If the means of identification are other records or writings, it is practically certain.  But if not other writings, as it may not be, it may nevertheless be a satisfactory means.  All that is required is that it shall be susceptible of certainty.  If, when the means are resorted to, it is still left open what lands are meant to be conveyed, the description will be bad.

*Id.* at 375.

The *Campbell* Court also emphasized that in order to bring certainty to the parties' intentions when the writing was made, the other means of identifying the property must have existed at the point the writing was made. The Court stated:

> [I]t is never good to refer to a future event, as that could not have been certain when the memorandum was made.  But generally a reference to an existing or past event is good.  There it can be known certainly what was intended; for that which has transpired is changeless.

The *Campbell* Court determined the description in the memoranda was sufficient, thus allowing "other satisfactory means" to resolve the boundary of the land conveyed.  *Id.*

*Bates v. Harris*, 138 S.W. 276 (Ky. 1911), decided two years after *Campbell*, involved a seller and buyer, both of Madison County, who entered

18

into an agreement stating that the seller "sold her Muddy creek farm" and that the "farm embraces 113 acres." *Id.* at 276. While citing Wood on Statute of Frauds, a Massachusetts case and the Kentucky case, *Hyden v. Perkins*, 83 S.W. 128 (Ky. 1904) (concluding that when the property is designated by a general name, parol proof may be given to show the property known by that name),[7] *Bates* extensively quoted *Moayon* for guidance for determining if the contract sufficiently described the property to be conveyed. In light of *Moayon*'s review of other states' and Kentucky precedent which determined that general descriptions like the "Snow farm" and the "Knapp home property" were sufficient to identify the property, and the rule that parol evidence may be

---

[7] *Hyden*, like *Moayon* and *Bates*, cites various authority. Along with Wood on Statute of Frauds, *Hyden* quotes Browne on the Statute of Frauds, § 385, for the general rule as to the sufficiency of the description:

> But the subject–matter may in any case be identified by reference to an external standard and need not be in terms explained. Thus, to describe it as the vendor's right in a particular estate, or as the property which the vendor had at a previous time purchased from another party, is sufficient. . . . Where the memorandum described the land as the estate owned by the seller on a certain street, and it appeared that he owned two estates on that street, to either of which the description might apply, the memorandum was held insufficient.

*Id.* at 129.

*Hyden* also states the decisions of the appellate court are in accordance with these principles in Greenleaf on Evidence, § 287:

> In the simplest case that can be put, namely, that of an instrument appearing on the face of it to be perfectly intelligible, inquiry must be made for a subject–matter to satisfy the description. If, in the conveyance of an estate, it is designated as Blackacre, parol evidence must be admitted to show what field is known by that name. Upon the same principle, where there is a devise of an estate purchased of A., or of a farm in the occupation of B., it must be shown by extrinsic evidence what estate it was that was purchased of A., or what farm was in the occupation of B., before it can be known what is devised.

*Id.* at 130.

19

admitted, not to identify, but to designate the subject matter already identified in the minds of the parties, *Bates* stated the following rule.

> The rule is that where the writing within itself, or by reference to other writings, contains sufficient data so that by the aid of parol evidence no question as to the intention of the parties can arise, it is sufficient. The most specific and precise description of the property requires some parol proof to complete its identification. A more general description requires more. When all the circumstances of possession, ownership, situation of the parties, and their relations to each other and to the property, as they were when the negotiations took place and the writings made, are disclosed, if the meaning and application of the writing, read in the light of those circumstances, are certain and plain, the parties will be bound by it as a sufficient written contract or memorandum of their agreement.

138 S.W. at 277 (citing Wood on Statute of Frauds, § 353; *Mead v. Parker*, 115 Mass. 413 (1874); and *Hyden*, 83 S.W. 128).

The *Bates* Court found that the property at issue was identified in three ways—the agreement explained that the farm belonged to the seller, that the farm was located on Muddy Creek, and that the farm contained 113 acres. The Court explained that if, then, the seller owns a farm on Muddy Creek containing 113 acres there can be no doubt that this answers the description, and noted that the parol evidence showed that to be the case. While the seller claimed to have two farms on Muddy Creek, the proof showed only one farm containing exactly 113 acres. *Id.* at 278.

*Price v. Hays*, 139 S.W. 810 (Ky. 1911), decided three months after *Bates*, presented the question whether the contract's description of "about 150 acres of land near Otter Creek station, one mile north of Rineyville, Hardin [C]ounty, Ky., on I. C. R. R." was sufficient. *Id.* at 810. *Price* cited *Campbell* as

20

containing a comparable property description and acknowledged that in

*Campbell* the buyer had the right to prove what particular piece of land was

sold to him because the writing was sufficient to authorize the introduction of

parol proof to identify the land. *Id.* at 811. The *Price* Court, however,

distinguished the writing before it as not containing ownership information and

applied the rule that if the writing itself does not afford the means of

identification of the property, the statute of frauds renders it unenforceable.

*Id.* at 810–11. The *Price* Court concluded the description within the contract

was insufficient because the seller did

> not refer to the land as his, or as his home place. He simply
> agree[d] to convey about 150 acres of land near Otter Creek
> station. No words [were] used in the writing to give a starting
> point, nor [was] the description sufficient to authorize parol proof
> to aid in identifying the land. [While the buyer] stated in an
> amended petition that [the seller] owned only one tract of land near
> the place named; . . . this idea is not gotten from the writing.
> There was nothing therein to indicate this fact, or that he owned
> no other land in that vicinity.

*Id.* at 811. *Wheeler v. Keeton*, 242 S.W.2d 1013 (Ky. 1951), called *Price* into

question.[8] However, *Hall*, discussed next, relied upon *Price* to state a rule

varying from earlier authority.

*Hall v. Cotton*, 180 S.W. 779 (Ky. 1915), addressed a contract which

recited that the sellers lived in Woodford County and the buyer in Garrard

County and described the sellers as having sold "their farm of fifty-three and

thirteen-sixteenths acres." The *Hall* Court described its task as deciding if the

---

[8] The *Wheeler* Court also called into question the decision in *Pope v. Myers*, 292 S.W. 318 (Ky. 1927), and *Corso v. Crawford*, 14 S.W.2d 1093 (Ky. 1929).

21

contract, unlike any previously upheld by the Court, contained a sufficient description. The *Hall* Court explained that while the appellate court had been "more or less liberal in upholding vague and indefinite descriptions embraced in contracts for the sale of lands," in contrast to many cases in which the contract was upheld, the contract at issue did not

> specify the county or state in which the land is situated; it [did] not refer to it as the land conveyed to him by "so and so"; it [did] not refer to it as the farm known as the "Jones" or "Smith" farm; it [did] not state that it lies on any named water course; it [did] not say that it is near any town or village, or any well–known object; it merely sa[id] [the Halls have sold] "their farm" of 53 13/16, acres.

*Id.* at 780. The *Hall* Court referred to *Price* as a case in which the description was not upheld as sufficient, emphasizing *Price*'s analysis that "No words [were] used in the writing to give a starting point, nor [was] the description sufficient to authorize parol proof to aid in identifying the land." *Id.*

The *Hall* Court, viewing *Bates* as clarifying the difference between "identification" and "designation" of property, described the following as the proper rule:

> that when the description contained in the writing, either by reference to a water course, or a town, or some well–known local object, or to a former conveyance of record, so identifies the property, which is the subject–matter of the contract, that it may be designated or pointed out in parol testimony by reason of such reference in the writing to such stream, town, conveyance, or well–known object, then parol testimony is competent for that purpose, but that, when the description in the writing has no such reference, and it is necessary to resort to parol testimony to identify the subject–matter of the contract, as distinguished from a designation of it, then parol evidence is incompetent, and the writing will be held insufficient to satisfy the demands of the statute.

22

*Id.* at 781.  Based upon that rule, the *Hall* Court concluded that the contract was insufficient because the contract did not provide a reference to either a physical object, to a prior record conveyance of the same property or, although not stated within the rule iteration, to other evidence within the writing itself, which would enable one to designate or point out the land which was the subject matter of the contract.  *Id.*

*Montgomery v. Graves*, 191 S.W.2d 399 (Ky. 1945),[9] decided thirty years after *Bates*, *Price*, and *Hall*, addressed whether an affidavit was sufficient as a "memorandum or note" of an agreement to sell and convey property under the statute of frauds, particularly whether it was deficient because it omitted a definite description or identification of the property.  The affidavit by the seller certified that he had sold to the buyer "the property at 554 Camden Ave.," and the seller's signature was subscribed by a Jefferson County notary.  The affidavit did not refer to a city, town or state or provide a reference to the property as being owned by the seller.  *Id.* at 400.

The *Montgomery* Court, reviewing the aforementioned cases, other Kentucky cases, out-of-state cases and treatises addressing the sufficiency of the property description under the statute of frauds, referred to the Restatement of the Law of Contracts as declaring the law to be applied to the

---

[9] After *Montgomery* was decided in 1945, our predecessor Court issued seven decisions in which *Montgomery*'s rule is cited with varying degrees of analysis: *Hon v. Richerson*, 193 S.W.2d 441 (Ky. 1946); *Schmid v. Anderson*, 222 S.W.2d 931 (Ky. 1949); *Wheeler v. Keeton*, 242 S.W.2d 1013 (Ky. 1951); *Burton v. Lafavers*, 254 S.W.2d 730 (Ky. 1952); *Parke v. Spurlin*, 268 S.W.2d 33 (Ky. 1954); *Chaney v. Noland*, 387 S.W.2d 308 (Ky. 1964); and *Sullivan v. Lay*, 457 S.W.2d 266 (Ky. 1970).

23

question before it. *Id.* at 400-01. That is, that the memorandum in order to make a contract enforceable must state with "reasonable certainty" the land to which the contract relates. *Id.* at 401.

The *Montgomery* Court then reiterated that generally a writing is sufficient when it affords a means by which the property can be identified, and that it is generally regarded as sufficient if it identifies the property when taking into consideration possession, ownership, and the situation of the parties when the negotiations took place, and the writing was made. *Id.* The Court, citing *Moayon* and *Bates* stated, "Evidence which is supplementary and explanatory is admissible to remove uncertainty by exposing it in the light of the circumstances." *Id.* After quoting *Bates*'s expression that seldom does a writing not require some parol proof to complete the property identification, the *Montgomery* Court summarized the property description rule, encompassing *Hall*'s rule regarding a reference to a physical object, as:

> Where the writing within itself or by reference to other writings furnishes some description or designation or sufficient data so that by the aid of parol evidence no question as to the intention of the parties can arise, it is deemed sufficient—the parol evidence not being to identify but to designate the subject-matter already identified in the minds of the parties by the language of the instrument when read in the light of the facts. That data may be a reference to a town, village or stream or other well-known local object, or to a former record of conveyance of the same property which enables one to point it out.

*Id.* at 401-02.

The *Montgomery* Court, then, although indirectly, described *Hall* as not the typical case, the typical case allowing parol proof to aid in the property's

24

identification.  *Id.* at 402.  The *Montgomery* Court stated its acceptance of the Restatement's declaration of the law that when given enough information, inclusive of parol or other evidence to aid in designating or locating the property upon which the minds of the parties had met and had merely omitted to describe it more definitely in the writing, the memorandum is sufficient even if neither the state nor the city where the land is situated is named.  *Id.* at 403. Consequently, the *Montgomery* Court, finding the jurat on the memorandum at issue allowed the inference that the property was in Jefferson County, Kentucky, and that the admissible parol evidence placed the property at 554 Camden Street in Louisville, held the memorandum contained a sufficient property description.  *Id.*  Although not explicitly stating it was correcting the rule articulated in *Hall*, the *Montgomery* Court may be viewed as returning to the rule expressed before *Price* and *Hall.*

*Wilson v. Hoffman*, 298 S.W.2d 317 (Ky. 1957), a quiet title action in which the defendant moved to dismiss the complaint based on the contract at issue being insufficient under the statute of frauds, *id.* at 318, appears to be the last case decided by our predecessor Court which cites *Hall*'s rule.  *Wilson* compared the property description in a memorandum supplementing a parol agreement to the property description in the *Hall* contract.  *Id.* at 318-19.  The *Wilson* memorandum contained the following information: "Oct. 10–1950, Received of Forrest Wilson, $75.00 on 3 acres of ground, Signed, Pearl Medcalf."  *Id.* at 319.  The *Wilson* Court concluded that the memorandum's

property description was even more indefinite than the one *Hall* held insufficient. *Id.*

Prior to that, *Wheeler v. Keeton,* 242 S.W.2d 1013 (Ky. 1951), quoted *Hall*, not for its rule, but its acknowledgment of our predecessor Court's more liberal approach to deciding the sufficiency of property descriptions during certain periods of time; noted that approach was again present in *Montgomery*; and reaffirmed that parol evidence "is admissible to designate the subject matter already identified in the minds of the parties." *Wheeler* states:

> We wrote in *Hall v. Cotton* [in 1915] . . . in upholding a questioned contract: 'This court has been more or less liberal in upholding vague and indefinite description embraced in contracts for the sale of lands, and has shown an inclination to relax, in a measure, the older and more vigorous interpretation given to the statute of frauds . . . .' This statement will be found to be true in most instances by reference to some of the older cases, and those of later dates, particularly *Montgomery v. Graves*, 301 Ky. 260, 191 S.W.2d 399, 400 [Ky. 1945].

*Id.* at 1016.

Satisfied that *Montgomery*, *Bates*, and *Moayon* are primary authority expressing the rule for determining whether a contract's property description is sufficient under the statute of frauds, we turn next to cases cited by the parties over the course of this litigation, cases not citing *Price* or *Hall*, as authority more directly supporting their respective positions when dealing with the certainty of the boundary and the parol evidence rule. Beyond *Campbell* discussed above, Gray cites *McNamara v. Marcum*, 162 S.W.2d 205 (Ky. 1942), and *Mahaffey v. Wilson*, 317 S.W.2d 888 (Ky. 1958), as authority supporting his argument that (1) the contract is not lacking in certainty as the parties

26

identified the land even if it had not yet been designated by surveyed legal description, and (2) the instrument or other evidence is not required to fix the boundary lines of the property. The Stewarts cite *Chaney v. Noland*, 387 S.W.2d 308 (Ky. 1964), as comparable to this case because it deals with the conveyance of a portion of a larger tract of land.

In *McNamara v. Marcum*, 162 S.W.2d 205 (Ky. 1942), the contract stated the seller sold to the buyer the "simple fee he owns and obtained by deed from T. T. Gregory & his wife Nancy Gregory, Daniel Sibert Sr., and wife, Harriet Sibert." *Id.* at 206. In regard to whether the description in the writing was sufficiently definite and certain to require specific performance, the *McNamara* Court framed its analysis as:

> If the description in a writing sought to be enforced is so indefinite as to make it necessary to resort to verbal testimony to determine the boundary (not the metes and bounds) referred to in the writing, such description will be held to be insufficient to require specific performance of the contract . . . . But where the description in the writing is sufficient to determine what tract of land was meant by the parties to the contract, specific performance will be enforced although it may be necessary to resort to parol or documentary evidence to determine the metes and bounds of the tract.

*Id.* at 207–08 (citing *Blair v. Combs*, 156 S.W.2d 465 (Ky. 1941); *Posey v. Mimsey*, 142 S.W. 703 (Ky. 1912); *Bates*, 138 S.W. 276; and *Campbell*, 118 S.W. 373). Because it was shown by the evidence that only one boundary of land was conveyed to McNamara by T. T. Gregory, Nancy Gregory, Daniel Sibert, Sr., and Harriet Sibert and the metes and bounds description of this boundary was contained in a deed recorded in the Clay County Clerk's office, the *McNamara* Court, agreeing with the trial court, concluded the property

27

description in the written contract was sufficient to designate the tract. 162 S.W.2d at 208.

In *Mahaffey v. Wilson*, 317 S.W.2d 888 (Ky. 1958), the property description was "The Moonlight Drive-In Theatre Described as Follows: Said drive-in Theatre is located at Milltown, on Highway No. 11 about one mile from Booneville, Kentucky." *Id.* at 889. Because the seller owned other lands surrounding the theatre tract, and in consideration of *Blair,* 156 S.W.2d at 466, stating that "the description contained in the writing [must be such that] a stranger can determine the boundary sought to be conveyed," the trial court concluded the description was insufficient, but the *Mahaffey* Court concluded otherwise. 317 S.W.2d at 889-91. The *Mahaffey* Court described the cases distinguishing between identifying and designation of land, explaining that "the writing is sufficient if it singles out a distinct parcel of land, even though resort to documentary or parol evidence is necessary to make certain its location and detailed description." *Id.* at 890 (citation omitted). The *Mahaffey* Court, noting that *Blair*'s language could be construed to mean that the writing must show the boundary lines of the property, with no cases known to support that doctrine, explained that was not what *Blair* intended. *Id.* After explaining that "boundary" and "tract" are used synonymously, *Mahaffey* quoted *McNamara*: "But where the description in the writing is sufficient to determine what tract of land was meant by the parties to the contract, specific performance will be enforced although it may be necessary to resort to parol or documentary evidence to determine the metes and bounds of the tract." *Id.*

28

In contrast to *Campbell, McNamara,* and *Mahaffey,* the Court in *Chaney v. Noland,* 387 S.W.2d 308 (Ky. 1964), held the contract unenforceable. There, the sellers owned a tract of land consisting of 700 acres known as the Carl Williams farm. The buyers were tenants on the farm and negotiated an agreement in which they would purchase 54 of the 700 acres. Prior to the agreement the parties had marked off the boundaries of the 54 acres. However, the receipt serving as the written memorandum of the agreement did not contain any reference by which the 54 acres could be identified. The receipt stated, "For payment on part of Carl Williams Farm as agreed Deed to be made February 1, 1962." The buyers' attorney prepared a deed, but only one seller, the husband, signed it. The sellers refused to complete the transaction upon learning that they could not assign the tobacco base for the 700 acres to the 646 acres the sellers had planned to retain. *Id.* at 309.

The *Chaney* Court considered that the 700-acre deed described the property by metes and bounds and that the memorandum made no reference to the stakes the parties had set out on the premises or to any other physical mark or extrinsic circumstance that would indicate the specific "part of Carl Williams Farm" covered by the agreement.[10] The *Chaney* Court agreed with the trial court that the memorandum was not enforceable, distinguishing the *Mahaffey* and *McNamara* decisions as being based upon writings which

---

[10] *Chaney, id.,* cites *Roberts v. Bennett,* 179 S.W. 605 (Ky. 1915), a case in which it was held that the description was insufficient because parol evidence was necessary to show the particular 210 acres out of a 304-acre tract that the parties had in mind to convey.

29

provided an avenue of identification, *Mahaffey* describing the property as "My Drive-in Theatre on Highway 11" and *McNamara* describing the subject matter as all of the interests acquired by the seller in a certain deed. Hence, both cases contained property descriptions which made the identity of the property, inclusive of its boundary limits, clear. *Id.*

Returning to the case before us, the Court of Appeals, citing *Hall*, 180 S.W. at 780, and *Montgomery*, 191 S.W.2d at 401, summarized the property description/parol evidence rule precedent as follows: "To satisfy the statute of frauds, our Courts have held that a written contract to sell real property must sufficiently describe the property so that its identity can be ascertained without the aid of parol evidence." "If the real property is sufficiently identified by the written agreement, parol evidence is then admissible to designate the particular property identified by the written contract." The Court of Appeals quoted *Hall*'s, 180 S.W. at 781, explanation of the type of information which must be in the writing to identify the property so that it may be designated or pointed out in parol testimony by reference to information in the writing.

The Court of Appeals concluded the property description within the Gray/Stewarts' contract was insufficient to allow parol evidence. The Court of Appeals pointed out that under the second item of agreement, "the parties clearly state that they have agreed upon the boundary but do not know the acreage thereof and cannot provide any written description thereof," but that the parties intended that the real property would be identified later by the description in the deed. Unlike the trial court, the appellate court did not view

30

the parties' acknowledgement that the Gatliff Coal Company's lease affected the property as evidence that the Stewarts agreed to convey *all* the real property subject to the lease.

Gray now contends that the Court of Appeals stated a rule contrary to *Hall* and *Montgomery*, and that court erroneously framed the analysis as first, one determines if the property is sufficiently identified on the face of the writing, and if so, then one looks to see if parol evidence will assist in pointing out the property. Gray views the Court of Appeals' opinion as requiring, contrary to precedent, a "final and complete statement" or a legal survey-type description of the property with the agreed-upon boundaries, in order to satisfy the statute of frauds. While Gray recognizes that many cases with sufficient property descriptions reference acreage, he contends that because the property was sold in gross, acreage is not an issue in this case, the contract identifying the subject matter as "certain real property located near Balkan and Calloway, in Bell County, Kentucky."

Beyond the written contract's "certain real property" preface and its provision that the parties have agreed on the boundaries of the property to be transferred, Gray points to other means of identification appearing on the face of the contract: (1) the property in the stated location is recognized as property owned by the Stewarts; (2) the contract indicates that the property is that which has been examined by Gray; (3) the contract indicates that the property is subject to a lease in favor of Gatliff Coal Company to which the contract was made subject; (4) the contract indicates that Gatliff Coal Company has

31

previously mined a portion of the property; and (5) the contract indicates the Gatliff Coal Company has a reclamation bond outstanding for the property, and reserved the right for Gatliff Coal Company to come upon the property for reclamation purposes until its reclamation bond is released by the Commonwealth. Gray states that all the foregoing information was properly recognized by the trial court when it found that "the exact location of the property is known and identified in the minds of the parties."

Gray contends that the Court of Appeals, although reciting the *Hall* rule, disregarded the contract details which situated the property by reference to physical objects and a former conveyance. Gray additionally emphasizes that the contract situates the property by indicating that the property is in Bell County and references the two communities, Calloway and Balkan, one on each side of the property. Gray also cites the reference to the long-standing mineral lease from the Stewarts to the Gatliff Coal Company as a reference to a former conveyance and the reference to the mines of the Gatliff Coal Company as a reference to a well-known object in the area. Gray contends all this information, singly or cumulatively, provides a means to identify the subject property which consequently allows use of extrinsic evidence to further designate the precise property involved.

In that regard, Gray contends that the trial court properly considered the survey description generated for the parties by Grande, the surveyor, before consummation of the contract; Grande's engagement letter (addressed to Gray

32

only); the Gatliff Coal Company Mining and Reclamation Plan Map; and the testimony and conduct of the parties at the time of negotiation.

In regard to the parties' testimony and conduct, Gray cites his affidavit submitted to the trial court in which he indicated that he met with Frank at his home at the time the parties originally agreed to the sale and that they reviewed the Gatliff Mining and Reclamation Plan Map, the Bell County Property Valuation (PVA) aerial photograph and the PVA geological quadrangle, the PVA resources both generally depicting the Stewarts' property in the same location. Gray's affidavit also states that it was at this meeting that he and Frank agreed that Gray would purchase the entire Stewart boundary between U.S. 119 and the Cumberland River.[11]

Not surprisingly, the Stewarts maintain that the contract is ambiguous on its face and argue that the contract defines the property as "certain real property located near Balkan" and does not call for conveyance of the Stewarts' boundary or "a boundary." Notably, the Stewarts further argue that no other statement within the contract bears on whether the parties had a meeting of the minds on the property to be conveyed. The Stewarts assert that if they had

---

[11] Although not described in his brief, Gray also stated in his affidavit that he also reviewed the Stewarts' tax bills covering the subject property, again confirming his understanding of where the property was located and what Frank was selling. Gray was also asked questions about tax bills at his deposition. Although Gray's deposition testimony regarding the tax bills is not mentioned within the parties' arguments, Gray testified that when he and Frank went to the PVA office, Frank had "at least ten, but [he would] say more [than ten]." Gray testified that although he and Frank went to the PVA office to pull files from those tax bills, he did not think the PVA staff pulled any files because he and Frank were advised they could not make a deed on what they had.

33

intended to sell all the property shown on the Gatliff map, the property could have and would have been identified with a simple reference to all the property depicted on that map. The Stewarts further argue that even if the contract locates the property, Gray misunderstands which evidence could be considered as parol evidence supporting the identification of the property because as explained in *Bates*, 138 S.W. at 277, and later expounded upon in *Campbell*, 118 S.W. at 375, that evidence is limited to facts and circumstances surrounding the parties when the contract was made or is to be executed. The Stewarts contend that Gray does not reference a written description or anything in existence at the time of the formation of the putative contract.

Since *Moayon*, the cases considered by our predecessor Court have often been cases in which the written agreement conveys the whole of the seller's property at a specific location. These cases reflect those terms which do not necessarily specify the amount of acreage within the whole, such as "my place"[12] and "the Named farm," are often sufficient for identifying the boundary of the property to be conveyed. Such descriptors serve to identify the specific property upon which the minds of the parties have met because they convey property ownership, location, and area or amount information, information essential to conveying a particular piece of property. When such terms are not used, but as here ownership and location of the property are evident from the contract, *McNamara*, with which *Mahaffey* and *Chaney* are in accordance,

---

[12] *Burton*, 254 S.W.2d at 731 ("'My place' is a colloquial expression which identifies the habitat of the owner with relative certainty.").

34

guides that "[i]f the description in a writing sought to be enforced is so indefinite as to make it necessary to resort to verbal testimony to determine the boundary (not the metes and bounds) referred to in the writing, such description will be held to be insufficient." 162 S.W.2d at 207. We find this principle particularly persuasive.

Here, the Court of Appeals held the writing, not explaining the amount of the property to be conveyed, to be so indefinite it could not be enforced. While Gray believes the Court of Appeals erred by not looking beyond the parties' statements in the contract, particularly that the parties are unable to determine the precise acreage of the agreed boundary, this Court's review does not lead to a different conclusion.

The contract's subject matter is "certain real property located near Balkan and Calloway, in Bell County, Kentucky." However, the term "certain real property" does not expressly identify that the whole or a part of the Stewarts' property is to be conveyed. While other information within a particular writing may be used to determine the parties' intention regarding the amount of land to be conveyed, in this case the references to Grande's employment to complete a survey, to the Gatliff lease on the property, and the Gatliff right to come onto the property do not add clarity to the size or the boundary of the property intended to be conveyed from that land owned by the Stewarts near Balkan and Calloway. While the parties state in the writing that they have agreed on the boundaries of the property to be transferred, we find nothing in the writing itself to resolve the dispute as to whether the parties

35

intended 411 or 260 acres to be conveyed and verbal testimony, although considered and weighed here by the trial court in favor of Gray, is not admissible to resolve the dispute. Although Gray urges that various writings created after the contract may be used to explain the parties' intentions and he urges those writings explain that the "certain real property" to be conveyed was the property surveyed by Grande, we view *Bates* and *Campbell* as clear authority guarding against their use. Consequently, we affirm the Court of Appeals' decision that the contract between Gray and the Stewarts is unenforceable under the statute of frauds.

Although our conclusion regarding the statute of frauds is obviously legally relevant to all three Stewarts, it does not have the same impact as to all of them because they do not occupy the same legal position before this Court given the Court of Appeals' decision to inject the issue of merger as to Frank.[13] Unlike William and Mary, he was not the prevailing party (at either lower court) and thus it was incumbent upon him to file a cross-motion for discretionary review to challenge his loss at the Court of Appeals. *Fischer v. Fischer*, 348 S.W.3d 582, 595 (Ky. 2011); Kentucky Rule of Civil Procedure (CR) 74; CR 76. By not having done so, he has forfeited the opportunity to present any

---

[13] The merger doctrine provides that "all prior statements and agreements, both written and oral, are merged into the deed and the parties are bound by that instrument." *Yeager v. McLellan*, 177 S.W.3d 807, 809 (Ky. 2005) (quoting *Borden v. Litchford*, 619 S.W.2d 715, 717 (Ky. App. 1981)). Unless one of the recognized exceptions to the merger doctrine such as fraud or mistake applies, it generally renders a party's arguments based on the underlying contract—such as the statute of frauds issue in this case—no longer relevant. *See id.* The delivery of the deed extinguishes them - because the contract has merged into the deed.

36

argument to this Court on that issue and is bound by the appellate court's decision finding he transferred his property interest to Gray when he delivered a deed he had signed. That said, we acknowledge that all three Stewarts, through joint counsel, have pressed throughout — at the trial court, the Court of Appeals and now this Court — their entitlement to the jury trial they requested and never waived. Their position on that point is well-taken, and had Frank cross-appealed his loss in the Court of Appeals, as explained more fully below, the denial of the requested jury trial would have provided grounds for rejecting the Court of Appeals' merger holding as to Frank, returning him to the same position as William and Mary.

While we agree with the Court of Appeals that the contract is not enforceable under the statute of frauds as to William and Mary, our analysis does not end here. Gray also argues that the Court of Appeals disregarded the trial court's factual conclusions that Frank accepted payment not just for himself but also on behalf of William and Mary too, and thus the appellate court erred in not applying the merger doctrine as to William and Mary. We disagree because any such holding would be premised on factual findings, findings which the trial court was not authorized to make given the Stewarts' demand for a jury trial, an assertion of a right that was never waived.

II.    **The Stewarts Did Not Waive Their Right to a Jury Trial, And the Trial Court's Findings of Fact May Not Serve as a Basis to Reverse the Court of Appeals' Decision As to William and Mary.**

As described earlier, a jury trial was scheduled but in response to the Stewarts' motion to reschedule the trial for medical reasons, Gray moved the

37

trial court to take under submission the legal issues relating to the enforceability of the contract. At the motion's hearing, the Stewarts agreed some issues could be settled as a matter of law. Gray's counsel prepared a proposed order to which the Stewarts' counsel indicated agreement after minor changes. The entered order stated in part:

1. The jury trial scheduled for May 3, 2018 is cancelled.

2. The parties being in agreement, the issues relating to enforcement of the Contract and Specific Performance are bifurcated from the plaintiff's damage claims. The Court will take the issues of the Contract and Specific Performance under submission on the following schedule:

. . . .

    b) The plaintiff shall have until June 11, 2018 to submit dispositive motions and/or his brief.

. . . .

3. The Court will entertain motions regarding the damage claims after entry of its Order on the for[e]going.

Gray filed his brief and while arguing that the trial court could easily decide this case as a matter of law, also stated that the trial court could choose to decide this case on the facts since the issues were under submission for judgment. Notably, the Stewarts' response brief refuted that the trial court was sitting as the fact-finder, pointing specifically to their demand for a jury trial on all triable issues. In reply, Gray stated that paragraph two of the court's order showed that as for the issues relating to the contract and specific performance, the case was submitted as a bench trial based upon the briefs and proof within the record.

38

After briefing was complete but before the trial court entered its judgment, the Stewarts filed another motion to schedule a jury trial. As he continues to argue before this Court, Gray maintained that the Stewarts clearly waived their right to a jury trial when they agreed to submit the liability claims on the contract and specific performance to the trial court for judgment. Gray asserted that there was arguably only one simple issue of fact to be decided if the trial court did not resolve all issues as a matter of law; with the location of the property known, the only issue of fact would be the intent of the parties as to the boundary of the property. Gray cited *George Pridemore & Son, Inc. v. Traylor Bros., Inc.*, 311 S.W.2d 396 (Ky. 1958), *Levi v. Gonzenbach*, 33 S.W.2d 657 (Ky. 1930), and *Montgomery v. Graves*, 191 S.W.2d 399 (Ky. 1945), to support his contention that the trial court was sitting as the finder of fact as authorized by Kentucky law.

The Stewarts countered that not only did the cited cases not support Gray's argument, but Gray did not cite any cases that would allow an inference that the type of language used in the trial court's order constituted a jury trial waiver because no Kentucky case would support that contention. The Stewarts themselves, as before this Court, cited *Smith v. Bear, Inc.*, 419 S.W.3d 49, 57 (Ky. App. 2013) (quoting *Hazard Coal Corp. v. Knight*, 325 S.W.3d 290, 296 (Ky. 2010)), in support of their argument that they had not waived their right to a jury trial, having only agreed to a briefing schedule on Gray's dispositive motions for issues that could be decided as a matter of law. Furthermore, they contended they had not acted in any manner to waive their right to a jury trial

as provided for in CR 39.01. At the motion's hearing, Gray argued that as required by CR 39.01 the Stewarts had made an oral stipulation in court and had made two written stipulations, one through the trial court's order and the second through email correspondence that the prepared order reflected the trial court's ruling. The trial court did not enter a separate order expressly addressing this jury trial waiver dispute. Rather, in the judgment in Gray's favor, the trial court simply stated, "By agreement this case is under submission on the issues of the Contract and specific performance."

The right to a jury trial is guaranteed by the Kentucky Constitution, a sacred right not to be violated. *See* CR 38.01. As discussed in *Hazard Coal Corp. v. Knight*, 325 S.W.3d 290, 294–97 (Ky. 2010), addressing whether a party may waive that right merely by failing to object to the trial court's *sua sponte* declaration that it would hear the case by bench trial, once a proper demand for a jury trial has been made, a high bar is set for waiver of that right.

> The constitutional term 'inviolate' means that the right to trial by jury is unassailable. Henceforth, legislation and civil rules of practice shall be construed strictly and observed vigilantly in favor of the right and is not to be abrogated arbitrarily by the courts. The constitutional right to a jury trial cannot be annulled, obstructed, impaired, or restricted by legislative or judicial action.

*Id.* at 295 (quoting *Steelvest, Inc. v. Scansteel Serv. Ctr, Inc.*, 908 S.W.2d 104, 108 (Ky. 1995)). Furthermore, CR 39.01 pertinently directs:

> When trial by jury has been demanded as provided in [Civil] Rule 38, the action shall be designated upon the docket as a jury action. The trial of all issues so demanded shall be by jury, unless (a) the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury. . . .

CR 39.01's "plain and forthright language affords no other construction but that once a proper demand for a jury trial has been made, the trial *shall* be by jury *unless* there is either a written stipulation filed with the court, or an oral stipulation of waiver made in open court." *Hazard Coal Corp.*, 325 S.W.3d at 296. Furthermore, because the waiver is of constitutional dimensions, "[t]here is a presumption against the waiver of constitutional rights, and for a waiver to be effective it must be clearly established that there was 'an intentional relinquishment or abandonment of a known right or privilege.'" *Id.* at 297 (quoting *Parson v. Commonwealth*, 144 S.W.3d 775, 792 (Ky. 2004)). As in *Hazard Coal Corp.*, this constitutional standard for waiver is not met in this case.

It is undisputed that the Stewarts properly demanded a jury trial in their answers to Gray's complaint. Gray argued, however, that the Stewarts waived their right to a jury through both oral and written stipulations, the oral stipulation being made during the hearing on Gray's motion and the written stipulation being made through the aforementioned entered order. Although *Hazard Coal Corp.* is not cited directly by either party, its discussion of *Equitable Life Assurance Society of the United States v. Taylor*, 637 S.W.2d 663 (Ky. App. 1982), *overruled on other grounds* by *Louisville and Jefferson Cty. Metro. Sewer Dist. v. Bischoff*, 248 S.W.3d 533 (Ky. 2007), allows that a jury trial, in certain circumstances, may be waived by entry of the trial court's order.

41

In *Taylor*, the plaintiff moved for a bench trial and then signed off on the order granting the motion prepared by opposing counsel. 637 S.W.2d at 665. The order stated, "On the Plaintiff's Motion, these cases are set for trial before the Court on Monday, March 12, 1979." *Id.* The plaintiff did not challenge the wording of the order and also did not otherwise object to the bench trial. *Id.* The *Taylor* court did not find any evidence in the record to indicate that the court's order should not be respected and concluded that the plaintiff affirmatively waived its right to jury determination of damages. *Id. Hazard Coal Corp.* summarized *Taylor:*

> the bench trial was effectively initiated by the party claiming a violation of its right to a jury trial, and counsel for opposing party physically signed off on the order . . . . In this respect, there *was* a written stipulation in the record waiving the plaintiff's right to a trial by jury.

325 S.W.3d at 297.

The facts in this case do not lead to the same conclusion that the Stewarts intentionally relinquished or abandoned their right to a jury trial. In contrast to *Taylor*, the Stewarts did not move the trial court for a bench trial, and upon review of the hearing on Gray's motion, this Court agrees with the Stewarts that they only agreed to legal issues being submitted to the trial court.

The wording of the order and its meaning were disputed by the Stewarts once Gray urged the trial court to decide factual issues. Along with raising the issue in their brief opposing summary judgment in favor of Gray, the Stewarts raised the issue by a separate motion to schedule a jury trial and continued

42

their insistence that they never waived their right to a jury trial.  As stated in *Hazard Coal Corp.*, "Constitutional rights are assurances given to each citizen of this Commonwealth that his interests will not be affected without specifically delineated safeguards.  These rights are personal to each of us and cannot be circumvented or cast aside through the whims or caprices of others."  *Id.* at 296 (quoting *Taylor*, 637 S.W.2d at 665).

In this case, neither the Stewarts' oral agreement to submit legal issues to the trial court nor the trial court's scheduling order quoted above waived the demanded jury trial.  Therefore, the trial court was not properly sitting as a fact finder.  Without ever addressing the Stewarts' jury trial argument, the Court of Appeals relied upon the trial court's factual finding that Frank delivered the deed to Gray and invoked the merger doctrine.  This material fact was disputed as reflected in the Stewarts' trial court brief citing deposition testimony which showed Frank signed the deed expecting Gray to pay the additional $15,000 which he had promised.[14]  Given the Stewarts' entitlement to the jury trial they

---

[14] Gray's complaint made allegations that the parties had performed under the contract—Frank fully and William and Mary partially.  The Stewarts' answer denied performance.  In particular Gray's complaint alleged that on November 21, 2017, Gray tendered the full purchase price of $80,000 to Frank and that Frank signed the deed and delivered the deed to Gray; that Gray was advised by Frank that William and Mary would also sign the deed, and in reliance, Gray drove to Lexington to obtain William and Mary's signatures on the deed but they then refused to sign the deed; and that the defendants breached the contract by refusing to sign the deed and pay one-half of the surveying costs.  Pertinently, the Stewarts answered these allegations denying that the referenced document was delivered to Gray, as any such execution and delivery was explicitly conditional and subject to the concurrence of William and Mary; that William and Mary were without knowledge or information sufficient to form a belief as to the truth of what Frank advised Gray at the referenced time and admit that they refused to sign the document presented to them by Gray, and otherwise denied the

43

repeatedly demanded, the Court of Appeals should not have relied upon the trial court's factual findings to rule in Gray's favor and against Frank under the merger doctrine, an issue we note that was not presented to or decided by the trial court. Nevertheless, as previously noted, that decision must stand under our appellate rules because Frank did not file a cross-motion for discretionary review to present it for our consideration. With respect to William and Mary, the Court of Appeals did not apply the merger doctrine as to them, noting they never signed the deed, but Gray maintains that the appellate court erred on this issue. We reject his argument. Any application of the merger doctrine to William and Mary would require resort to the trial court's findings of fact, findings which it was not authorized to make given the Stewarts' consistent, repeated assertion of their right to a jury trial.

### III. The Court of Appeals Did Not Err When It Reversed the Trial Court's Damage Award.

Finally, the trial court awarded Gray damages against the "Defendants, jointly and severally" for failing to fully and timely perform under the contract. The Court of Appeals reversed the award against Frank because he signed and delivered the deed to Gray thus fully performing; against Leisa because she had no interest in the property; and against William and Mary because the contract was unenforceable against them by virtue of the statute of frauds. While Gray advances arguments before this Court for reinstatement of the damage award

---

averments. The Stewarts also answered that the deed referenced in the complaint was not delivered to Gray, as a matter of law, because it was not signed by all parties.

44

against William, Mary, and Frank, our affirmance of the Court of Appeals' decision that the contract is not enforceable against William and Mary and our conclusion that the appellate court's holding that Frank transferred his property interest under the merger doctrine is final and binding, result in our similarly affirming that court's decision reversing the damage award.[15]

## CONCLUSION

The Court of Appeals' decision that the real property contract entered into by Gray and the Stewarts is unenforceable under the statute of frauds as a matter of law is affirmed. However, this decision does not apply equally to William, Mary and Frank. Because Frank did not challenge by a cross-motion for discretionary review the Court of Appeals' decision that he transferred his property interest under the merger doctrine, that decision must stand. Furthermore, based upon these conclusions, we affirm the Court of Appeals' decision reversing the trial court's damage award.

Minton, C.J.; Conley, Keller, Nickell, and VanMeter, JJ., sitting. All concur. Lambert, J., not sitting.

---

[15] Gray argues that damages are proper against Frank because he joined with William and Mary in attempting to avoid the transaction by adopting the position that the contract was unenforceable, he materially contributed to the significant delay in complete performance by the "Appellees," and his acts of repudiating the transaction and litigating against Gray are the basis for the damage award against him. While Gray cites no legal authority in support of this argument, having concluded that William and Mary were not required to perform under the contract, we accordingly conclude that a damage award against Frank would be improper.

45

COUNSEL FOR APPELLANT:

Jeffery W. Helton
Helton & Helton

Daniel L. Farmer
Farmer Law Office


COUNSEL FOR APPELLEES:

Scott M. Webster
Tooms, Dunaway & Webster